**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald H. PACHECO,
Defendant–Appellant.**

**No. 87–1018.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 17, 1990.

Decided Aug. 17, 1990.

---

Daniel H. Bookin and Kristina E. Harrigan, Farella, Braun & Martel, San Francisco, Cal., for defendant-appellant.

Karen M. Quesnel, Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before SCHROEDER and CANBY, Circuit Judges, and REA,[*] District Judge.

SCHROEDER, Circuit Judge:

Ronald Pacheco appeals his convictions, following a jury trial, for aiding the preparation of false income tax returns, in violation of 26 U.S.C. § 7206(2), making and subscribing a false income tax return, in violation of 18 U.S.C. § 1001, and making false statements to the IRS, in violation of 26 U.S.C. § 7206(1).

We must decide whether the tax investment scheme devised and executed by the appellant was illegal and if so, criminal. We hold it was both. We are also called upon to decide a host of evidentiary and procedural issues. Because none of them require us to reverse the appellant's conviction for tax offenses, we affirm.

### Background

Ronald H. Pacheco has an extensive background in tax. He was an Internal Revenue Agent for twelve years and has a master's degree in business administration, specializing in taxation, from Golden Gate University where he also taught tax. The charges against him arose from a limited partnership ("Lapeer Associates" or "Lapeer") he devised in 1979 to allow investors a three-to-one tax write-off for each dollar they invested. Not only was Pacheco the general partner, but he prepared the returns for the partnership as well as submitting returns to the IRS on behalf of the investors. The deductions were the basis of several charges in the indictment for causing the filing of false returns. In addition, on his own return, Pacheco only reported taxable income of $24,207 for 1980. He did not report two "withdrawals" totaling $33,560 taken from the Lapeer Associates partnership accounts, and this conduct resulted in additional charges.

On October 30, 1986, Pacheco was found guilty of twelve counts of a 14–count superseding indictment after a previous trial ended in mistrial. Eight of the twelve counts related to his aiding and assisting in the preparation and presentation of the Lapeer investors' false and fraudulent individual income tax returns in violation of 26 U.S.C. § 7206(2). Three counts dealt with Pacheco's making false and fraudulent statements in concealing material facts relating to a matter within the jurisdiction of the Department of Treasury, in violation of 18 U.S.C. § 1001. These counts related to a number of Form 1025–Schedule K's which were submitted on behalf of Pacheco's clients in connection with the investments they had made in Lapeer Associates. The remaining conviction was for violating 26 U.S.C. § 7206(1), by making and subscribing his own individual tax return which he did not believe to be true and correct as to every material matter.

### Willful Filing of False Statements: The Valuation for the Consulting Fee Deduction

Pacheco has two principal contentions in challenging his convictions of preparing false and fraudulent returns under section 7206 and making false and fraudulent statements in violation of section 1001. All those convictions were based upon the Lapeer partnership's deduction for a profits interest in the partnership granted to Pacheco.

---

[*] Honorable William J. Rea, United States District Judge for the Central District of California, sitting by designation.

Pacheco contends, first, that the deduction claimed for the partnership and reflected on the individual partners' returns did not violate the law. In the alternative, he contends that even if the deduction was improper, he did not act with the requisite willfulness because the evidence at most demonstrated that he was negligent.

To evaluate the merit of these contentions it is necessary to have some background understanding of Pacheco's conduct and the legal context in which it was set. In 1979, Pacheco set up the real estate limited partnership called "Lapeer" to develop real estate property in Lapeer, Michigan. For his consulting services, the Lapeer partnership agreement compensated him with a 20% interest in partnership profits. During 1979, Pacheco promoted Lapeer and had received as investments $229,000 in cash contributions and $150,000 of subscriptions receivable.

Pacheco advertised Lapeer as a tax shelter whereby investors would get a three-to-one tax write-off for investment in the limited partnership. In the fall of 1979 Pacheco valued the partnership at $18 million which, according to Pacheco's calculations, would coincidentally allow the investors in Lapeer their three-to-one deduction. The deduction derived through the 20% fee paid to Pacheco, which he was to deduct as an expense on Lapeer's partnership return (20% of $18 million is $3.6 million, which is three times the $1.2 million in contributions Pacheco expected). In 1979, when Pacheco received less than his expected contributions, he retained his three-to-one deduction formula (which was based upon the original

$18 million valuation) and determined his fee by multiplying the contributions he received by three. Beginning in approximately March, 1980, Pacheco began preparing and filing returns for Lapeer investors which claimed a total of $987,950 in losses largely attributable to the consulting deduction. Subsequently, Pacheco prepared the partnership's income tax return for 1979 and deducted the $925,000 consulting fee as an expense of the partnership.

■ Pacheco claims that his valuation and the subsequent deduction were lawful under I.R.C. § 707(c), which permits deductions for payments to partners in limited circumstances.[1]

The statute is clear that in order for a partnership to claim a deduction under the terms of section 707(c), the payments to the partner must meet the requirements of section 162(a). *Diamond v. Commissioner,* 92 T.C. 423, 1989 WL 13679 (1989); *Durkin v. Commissioner,* 87 T.C. 1329, 1388–89, 1986 WL 22064 (1986), *aff'd,* 872 F.2d 1271 (7th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 84, 107 L.Ed.2d 50 (1989); *Wildman v. Commissioner,* 78 T.C. 943, 960 n. 19, 1982 WL 11104 (1982); *Cagle v. Commissioner,* 63 T.C. 86, 91, 1974 WL 2717 (1974), *aff'd* 539 F.2d 409 (5th Cir.1976); *see* Treas. Reg. § 1.707–1(c)(1956).

Section 162(a)(1), in turn, requires that salaries and other compensation be reasonable. I.R.C. § 162(a)(1).[2] Pacheco's profits interest totaled 20% of his valuation of the partnership. Even assuming 20% was a reasonable commission for the services Pacheco rendered in 1979,[3] the legality of the

---

**1.** This section provides:

(c) **Guaranteed payments.**—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses).

I.R.C. § 707(c).

**2.** This section provides:

(a) **In general.**—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable

year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

I.R.C. § 162(a)(1).

**3.** We note that "[a]ny fee for services to be rendered in the future is not deductible in the year of expenditure." *Durkin v. Commissioner,* 87 T.C. 1329, 1388–89, 1986 WL 22064 (1986), *aff'd* 872 F.2d 1271 (7th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 84, 107 L.Ed.2d 50 (1989); *Estate of Boyd v. Commissioner,* 76 T.C. 646, 667, 1981 WL 11357 (1981). Therefore, the partnership's deduction could only have been for services already rendered.

partnership deduction would depend upon whether the $4,625,000 (20% of $4,625,000 = $925,000) valuation was reasonable. *See id.*; Treas. Reg. § 162–7(b)(3) ("in any event [a deduction for] compensation paid may not exceed what is reasonable under all the circumstances"); *Barton–Gillet Co. v. C.I.R.*, 442 F.2d 1343 (4th Cir.1971); *United States v. Haskel Engineering & Supply Co.*, 380 F.2d 786, 788–89 (9th Cir. 1967); *Durkin*, 87 T.C. at 1388–89; *see also* Hortenstine & Ford, *Receipt Of A Partnership Interest For Services: The Diamond Case*, 65 Taxes 880, 917 (1971–72) (if profit interests transfers constitute taxable events, "expert appraisals of all profit interests" are required); *Frank v. Commissioner*, 54 T.C. 75, 94, 1970 WL 2221 (1970) (fair market value is appropriate measure for valuation), *aff'd* 447 F.2d 552 (7th Cir.1971); *cf. Pagel Inc. v. C.I.R.*, 91 T.C. 200, 1988 WL 81469 (1988) (reasonable accuracy is required in valuation under section 83. "To hold otherwise would be to encourage estimates of fair market value of such rights on the basis of pure speculation and surmise.") (citation omitted), *aff'd*, 905 F.2d 1190 (8th Cir.1990).

It is also well-established that in order for an accrual method partnership to deduct the profits interest it transfers to a partner, the amount must have an ascertainable value. Treas. Reg. § 1.446–1(c)(1)(ii) (1957) (accrual method taxpayer may only deduct amounts that "can be determined with reasonable accuracy").

■ Here, with only $379,000 invested in the partnership, Pacheco valued it at $4,625,000. The evidence provided no basis for this figure other than his own "forecast" of what the partnership would be worth. Expert testimony at trial showed the partnership was actually worth no more than $408,000. Accordingly, Pacheco's $925,000 service fee, derived as a percentage of the $4,625,000 valuation, was similarly without justification. Under these circumstances the jury was justified in finding this figure false. Because Pacheco's arbitrary valuation and inflated fee clearly violated section 707(c) and Treas.

Reg. § 1.446–1(c)(1)(ii), it was unlawful. Pacheco's claim that he did not have fair notice that such conduct was prohibited is also without merit. *See United States v. Austin*, 902 F.2d 743, 745 (9th Cir.1990) (fair notice of illegal conduct satisfies due process); *United States v. Mussry*, 726 F.2d 1448, 1454 (9th Cir.) (same), *cert. denied*, 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *cf. United States v. Schulman*, 817 F.2d 1355, 1359 (9th Cir.) ("sham transactions are illegal"), *cert. dismissed*, 483 U.S. 1042, 108 S.Ct. 362, 97 L.Ed.2d 803 (1987); *United States v. Clardy*, 612 F.2d 1139, 1152–53 (9th Cir.1980) (affirming conviction under section 7206 for "sham" tax deductions).

■ Pacheco also claims that if his conduct was illegal, there was insufficient evidence of the requisite willfulness. We review this claim to determine if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Mason*, 902 F.2d 1434, 1441 (9th Cir.1990).

Pacheco is correct that both statutes require a false statement, *see United States v. Yermian*, 468 U.S. 63, 69, 104 S.Ct. 2936, 2939, 82 L.Ed.2d 53 (1984); *United States v. Crooks*, 804 F.2d 1441, 1448 (9th Cir. 1986), *modified*, 826 F.2d 4 (9th Cir.1987), and a willful violation. *See Yermian*, 468 U.S. at 69, 104 S.Ct. at 2939 ("On its face . . . section 1001 requires that the Government prove that false statements were made knowingly and willfully. . . ."); *United States v. Salerno*, 902 F.2d 1429, 1431–32 (9th Cir.1990); *United States v. East*, 416 F.2d 351 (9th Cir.1969); *cf. United States v. Dahlstrom*, 713 F.2d 1423, 1428 (9th Cir.1983) (no showing of willfulness under section 7206(1) where legality of tax shelter program was "completely unsettled"), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984).

There was sufficient evidence for the jury to conclude that Pacheco did indeed willfully inflate the value of the partnership. While Pacheco claims that he "be-

lieved that he could make a reasonable estimate of the size of the liability at the time the limited partners made their cash contributions," the government offered evidence that Pacheco's valuation was arbitrary. For example, the government introduced evidence that before making his valuation Pacheco promised investors a three to one write-off on their tax returns for each dollar invested, and that Pacheco had stated that his income projection could be "anything we want it to be." The jury certainly could have inferred from the offer and Pacheco's statement that the valuation was not a reasonable one, but was designed simply to allow investors a leveraged deduction. Moreover, the government introduced evidence that the Lapeer project had little income and no profits in 1979 and 1980, thereby undercutting Pacheco's original estimate. Also, the government introduced evidence that in 1980 Pacheco discovered that the cheapest financing he could obtain was 22%, while his original estimate was based upon obtaining financing at 8 to 8.5 percent, yet he maintained his original valuation for the 1980 returns of the investors.

Given this evidence that Pacheco willfully inflated the partnership's valuation to allow investors an artificial deduction, *United States v. Barshov*, 733 F.2d 842 (11th Cir.1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 904, 83 L.Ed.2d 919 (1985), is instructive. There, the court affirmed convictions where the defendants fraudulently falsified projected revenue in arriving at an amount that could be deducted for depreciation purposes.

The thrust of the government's proof was the criminal design to inflate the purchase price of the films and the income therefrom in order to maximize the depreciation costs and the investment credit. Although the appellants offer several innocent "explanations" to rebut the evidence, none of them are so persuasive that they could not have reasonably been rejected by the jury. Simply stated, the jury was confronted with evidence which clearly established a pattern of guilt, and there was additional evidence from which they could reasonably conclude that the incriminating evidence arose not coincidentally or accidentally, but intentionally and purposefully. Taking the evidence as a whole, it was more than enough to sustain the verdicts of guilt.

*Id.* at 846. In sum, the evidence in this case as well was more than sufficient for the jury to find a willful violation of the tax laws.

Pacheco nevertheless claims that his conduct was permissible under *Diamond v. Commissioner*, 492 F.2d 286 (7th Cir.1974), and even if it was not, that he relied in good faith upon that decision.

However, *Diamond* by its terms precludes the conduct in which Pacheco engaged. *Diamond* stands for the limited proposition that if a profits interest has "a determinable market value at the moment of creation," 492 F.2d at 290, this value must be declared pursuant to I.R.C. § 721 as income by the service partner who receives it. *Diamond* does not establish a corresponding deduction for the partnership. Compare I.R.C. § 707(c). Moreover *Diamond* involved a rather unique situation and was so limited by the Seventh Circuit. In *Diamond* the service partner received a profits interest and immediately sold it for $40,000, thereby establishing its market value. The court distinguished its holding from those "typical situations" where the profits interest "will have only speculative value, if any." *Id.* The case at hand presents such a "typical situation."

Rather than sell his profits interest on the open market, as in *Diamond*, Pacheco valued it himself. Such self-serving valuation is insufficient to bring his case within the rationale of *Diamond*.

Pacheco's alternative argument is that if he erroneously relied upon *Diamond*, he did so in good faith. He presented the *Diamond* argument to the jury, however, and it was rejected. As summarized above, the jury had sufficient evidence before it to find that Pacheco did not rely upon *Diamond* in good faith but instead willfully

violated the tax laws.[4]

### Prior Bad Act Testimony

■ Pacheco also argues that the district court improperly allowed testimony from Lillie Lambert, a partner with Pacheco in another of Pacheco's ventures, the "Lambert Partnerships." At trial, Pacheco's counsel objected to Ms. Lambert's testimony "basically under relevancy, under Rule 403, this whole line of questioning." The district court judge overruled the objection with this remark:

As I understand it, this is offered under [Federal] Evidence Rule 404(b). There has been an objection on the ground of relevance, competency, and, furthermore, that it would be excluded by a proper exercise of discretion provided in Evidence Rule 403. There was argument off the record this morning at 8 o'clock, and at that time the court overruled each of the objections. And having made the determination that, as I understand the purported testimony, it really does not involve the subject matter of section 404(b) but, rather, has direct relevance to matters in evidence in this trial and, furthermore, that that being the case, there is no proper scope for the exercise of Rule 403.

Pacheco claims that Lambert's testimony regarded unrelated acts of alleged dishonesty by Pacheco and that it was improperly admitted under Rule 404(b). Additionally, Pacheco claims that the district court erred by failing explicitly to balance to probative value of the evidence against its prejudicial effect.

■ As the district court's statement indicates, Pacheco's argument that the evidence was irrelevant was rejected because the evidence was not admitted to prove Pacheco's character. It was instead admitted as substantive evidence in the government's case. This was an accurate characterization. Count X of the indictment (on which Pacheco was acquitted) charged that

Pacheco had received funds and failed to include them on his return as income. Lambert told the jury that during 1979 Pacheco had misappropriated a total of around $66,000 in Lambert Partnership funds and that sometime later had refinanced his house to pay back $23,000. Lambert further testified that Pacheco had sold an interest in the partnership's motels for his own benefit and only subsequently reversed the transaction and repaid the amount. This testimony went directly to the substance of the charges against Pacheco, and was not evidence of other bad acts. Contrary to Pacheco's suggestion, there is no requirement that trial judges must always explicitly balance the probative value of evidence against the possibility of prejudice. *United States v. Johnson,* 820 F.2d 1065, 1069 (9th Cir.1987); *see* I J. Wigmore, *Evidence* § 10a at 687 (Tillers rev.1983) (citing cases). Here the evidence was relevant to prove the elements of the crime and had no prejudicial effect other than to incriminate Pacheco. Therefore, the district court was well within its discretion to allow the testimony. *United States v. Long,* 706 F.2d 1044, 1054 (9th Cir.1983).

■ Pacheco also criticizes the district court for announcing in the presence of the jury that the testimony "has direct relevance to matters in evidence in this trial." There was no prejudice. The district court's statement concerning the relevancy of the testimony was no more than an evidentiary ruling and cannot reasonably be read otherwise.

### The Claimed Improper Amendment to the Indictment

Pacheco argues that while Count XI of the indictment charged him with violating 28 U.S.C. § 7206(1), by falsely stating "his taxable income for calendar year 1980," he was actually convicted of falsely stating his "gross income." He argues that the court erroneously denied him the opportunity to prove a number of deductions which he

---

**4.** We also note that section 707(c) requires that the amount deducted by the partnership be included as gross income in the service partner's return. *See Cagle v. Commissioner,* 539 F.2d 409, 414 (5th Cir.1976); *Miller v. Commissioner,* 52 T.C. 752, 1969 WL 1654 (1969); Rev.Rul. 80–234, 1980–2 C.B. 203. Pacheco failed to include his profits interest as income.

failed to claim on his tax return, but which he would have been entitled to claim. A conviction for falsely stating "gross income," Pacheco's argument continues, is a constructive amendment of the indictment and requires reversal.

■ Pacheco is correct that convicting the defendant of an offense that was not charged in the indictment constitutes per se reversible error. *United States v. Stewart Clinical Laboratory, Inc.*, 652 F.2d 804, 807 (9th Cir.1981); *see United States v. Wright*, 742 F.2d 1215, 1219 (9th Cir.1984), overruled on different grounds, *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1987). However, there was no difference between the crime charged and the crime of conviction here. Pacheco was convicted of the offense for which he was indicted.

■ We look first to Pacheco's premise that he had lawful deductions he did not claim. The premise fails. The deductions that Pacheco now says he could have claimed were not lawful deductions. After the court denied Pacheco the opportunity to prove to the jury that there existed unclaimed deductions which he was entitled to take, he proffered the testimony of Charles A. Deen. Deen said that certain loans made by Pacheco to the United California Bank and other financial institutions would create a worthless debt deduction under 26 U.S.C. § 166 for the year in question.

However, under the facts of this case these deductions would not be allowable as a matter of law. Section 1.166–1(e) of the Treasury regulations provides:

> Worthless debts arising from unpaid wages, salaries, fees, rents, and similar items of taxable income *shall not be allowed as a deduction under section 166 unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is claimed or for a prior taxable year.*

Treas. Reg. § 1.166–1(e) (emphasis added). Pacheco did not at trial nor does he now claim that he ever reported such income. Therefore, the district court certainly did not err in declining to admit this testimony.

■ Pacheco goes on to argue that he has additional deductions which he failed to present to the district court, but which would serve to offset the additional income the government proved he failed to report. As to these, there was no offer of proof. Federal Rule of Evidence 103(a)(2) is clear: "Error may not be predicated upon a ruling which admits or excludes evidence unless . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Fed.R.Evid. 103(a)(2). We cannot review evidence that was not presented to the district court. *See Earle v. Benoit*, 850 F.2d 836, 847 (1st Cir.1988) ("We know of no way properly to review appellant's current claim of error on this incomplete record."); 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[03] at 103–35 (1989) (offer of proof required in order to enable the trial judge to determine whether evidence would be available for any purpose and "to permit appraisal by an appellate court . . ., so that it can determine whether the trial court committed reversible error in excluding the evidence.").

Because Pacheco failed to show that he could have proved any valid deductions if given the opportunity to do so, we need not decide whether, in a prosecution under section 7206(1), a defendant may prove at trial the existence of unclaimed deductions.

### Statute of Limitations

Pacheco argues that four counts of the superseding indictment upon which he was convicted were filed beyond the six-year statute of limitations for violations of section 7206. *See* 26 U.S.C. § 6531(3)–(5) (1982). The superseding indictment was filed after an original indictment led to a trial in which the jury was unable to reach a verdict. Pacheco acknowledges that the counts he now contests had previously been included in the original indictment, but argues that the additional counts added in the superseding indictment constitute such a broadening or substantial amendment of the original indictment that they prevented the tolling of the statute of limitations dur-

ing the pendency of the superseding indictment.

Generally speaking, the return of an indictment tolls the statute of limitations with respect to the charges contained in the indictment. *United States v. Italiano*, 894 F.2d 1280, 1282 (11th Cir.1990); *United States v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777, 778 (9th Cir.) (citing *United States v. Wilsey*, 458 F.2d 11, 12 (9th Cir.1972)), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986). If a superseding indictment on the same charges is returned while a previous indictment is still pending, the tolling continues. *Italiano*, 894 F.2d at 1282. An original indictment remains pending until it is dismissed or until double jeopardy or due process would forbid prosecution under it. *See United States v. Grady*, 544 F.2d 598, 602 n. 4 (2d Cir.1976). Pacheco does not contend that the original indictment was not still pending when the superseding indictment was returned.

Pacheco is correct that if the counts in the superseding indictment "broaden[ed] or substantially amend[ed]" the charges in the original indictment, the statute of limitations would not have been tolled as to those charges. *Sears*, 785 F.2d at 778–79 (quoting *Grady*, 544 F.2d at 602). However, where the counts of an original indictment are simply duplicated verbatim into a superseding indictment, the statute of limitations on those counts is tolled, even if additional counts that are subject to no limitations objection are added. *See United States v. Jones*, 816 F.2d 1483, 1487 (10th Cir.1987) (to determine whether superseding indictment impermissibly broadened original indictment, compare individual charges); *see also Sears*, 785 F.2d at 779. This is because when charges from an original indictment are duplicated in a superseding indictment the defendant cannot claim he lacked notice of those charges.

Notice to the defendant is the central policy underlying the statutes of limitation. If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him. That is, he knows that he will be called to account for certain activities and should prepare a defense.

*Italiano*, 894 F.2d at 1283. The four counts of the superseding indictment which Pacheco challenges were duplicative of counts in the original indictment. The statute of limitations was not violated.

### *Other Contentions*

In his supplemental pro se brief, Pacheco argues that this court's denial of his motion for bail pending appeal and this court's denial of his motion for reconsideration of this denial violated his rights to due process and equal protection. However, since Pacheco has already served his term of imprisonment and has been released from custody, his complaint regarding the denial of bail pending appeal is moot. *See Murphy v. Hunt*, 455 U.S. 478, 481–82, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982).

We reject Pacheco's additional contentions of error. There was no prosecutorial misconduct, nor was the grand jury improperly utilized in this case. Pacheco's constitutional rights were not violated by the introduction of former testimony under Federal Rule of Evidence 804(b)(1). *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Pacheco's contention of error due to inconsistent verdicts, similarly is without merit. *United States v. Powell*, 469 U.S. 57, 62–67, 69, 105 S.Ct. 471, 475–78, 479, 83 L.Ed.2d 461 (1984); *United States v. Dotterweich*, 320 U.S. 277, 279, 64 S.Ct. 134, 135, 88 L.Ed. 48 (1943); *United States v. Guzman*, 849 F.2d 447, 448 (9th Cir.1988); *United States v. Merriweather*, 777 F.2d 503, 507 (9th Cir. 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1497, 89 L.Ed.2d 898 (1986). There was no vindictive prosecution in Pacheco's case, nor was the trial judge required to recuse himself on the basis of his prior friendship with a witness. *See United States v. Studley*, 783 F.2d 934, 939 (9th Cir.1986). Additionally, Pacheco's claims of ineffective assistance of counsel fail the test of *Strick-*

**306**

*land v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

AFFIRMED.