103 F.3d 141
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bernhard DOHRMANN, Defendant-Appellant.
 No. 95-10505.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 19, 1996.
Decided Dec. 09, 1996.
 
 1
 Before: CANBY and FERNANDEZ, Circuit Judges, and JONES,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendant/appellant Bernhard Dohrmann appeals his conviction of sixteen counts of criminal contempt for disobeying an injunction that prohibited him from violating the anti-fraud provisions of the federal securities laws. Dohrmann contends that the superseding indictment under which he was convicted substantially broadened the original indictment, and that the superseding indictment consequently violated the statute of limitations. Dohrmann further argues that the district court erred by denying Dohrmann's motion to dismiss the indictment for pretrial delay and by refusing to strike from the indictment allegations regarding the use of debenture proceeds. Dohrmann also asserts that substantial evidence did not support all of his convictions. Dohrmann finally contends that the district court violated his due process rights by increasing his sentence. We affirm.
 
 BACKGROUND
 
 4
 We need not set forth all of the facts because the parties are familiar with them.
 
 
 5
 The government issued two indictments in this case. The original indictment, returned on December 13, 1991, included eleven counts. Counts one through ten charged Dohrmann with mail fraud in connection with pay telephone sales. Count eleven charged Dohrmann with criminal contempt for wilfully disobeying, from September 1987 through June 1988, an injunction that prohibited Dohrmann from violating the anti-fraud provisions of the federal securities laws. Count eleven alleged that Dohrmann was the president of Invest America and that Invest America had offered and sold 12% debentures from June 1987 through May 1988. Count eleven further alleged that Dohrmann provided all of the factual information that was set forth in the debentures' "offering materials." Count eleven also charged that the debentures' prospectus fraudulently represented that 75% of the debenture offering's proceeds would be used for advertising and promotion of Invest America's franchise network. Count eleven further charged that on March 12, 1988, Dohrmann made a presentation to potential investors at which Dohrmann made five general fraudulent statements.
 
 
 6
 A superseding indictment was returned on June 8, 1994. The superseding indictment dropped charges one through ten regarding mail fraud. Charge eleven of the original indictment was replaced with seventeen contempt charges. The superseding indictment charged that Dohrmann had violated the fraud injunction from September 1987 through December 1988. The superseding indictment alleged that from April 1987 through June 1998, at Dohrmann's direction, Invest America offered and sold 12% debentures to approximately 233 investors. The superseding indictment also alleged that Dohrmann had assisted in the offers and sales of these debentures by producing literature and tape recordings and by making presentations at sales conferences and meetings. The superseding indictment charged that Dohrmann distributed a "private placement memorandum" in May 1987 that fraudulently indicated that 75% of the debentures' proceeds would go to advertising and promotion. The superseding indictment further charged that on March 12, 1988, Dohrmann made a presentation to prospective debenture purchasers at which Dohrmann made nine specific fraudulent statements. The superseding indictment finally listed seventeen specific investors who had purchased Invest America debentures from December 1987 through May 1988.
 
 ANALYSIS
 Statute of Limitations
 
 7
 We review for abuse of discretion the district court's refusal to dismiss the superseding indictment. United States v. Garza-Juarez, 992 F.2d 896, 903 (9th Cir.1993), cert. denied, 510 U.S. 1058 (1994). We review de novo the district court's interpretation of the charges in the two indictments. United States v. Boone, 951 F.2d 1526, 1542 (1991).
 
 
 8
 A superseding indictment that is brought after the statute of limitations has run is timely if the original indictment is still pending and if the superseding indictment does not substantially amend or broaden the original charges. United States v. Sears, Roebuck & Co., 785 F.2d 777, 778 (9th Cir.), cert. denied, 479 U.S. 988 (1986). The essential question is whether the two indictments are similar enough that the original indictment gave the defendant sufficient notice of the charges in the superseding indictment. United States v. Pacheco, 912 F.2d 297, 305 (9th Cir.1990). We compare the two indictments in order to make that determination. See Sears, 785 F.2d at 779.
 
 
 9
 Here, although the superseding indictment on its face seems to broaden the original indictment, a side by side comparison shows that the superseding indictment actually narrowed and specified the original charges. First, the superseding indictment replaced Dohrmann's five general statements from the March 12, 1988, presentation with nine specific statements. Each of the specific statements, however, correlates with one of the five general statements in the original indictment so that Dohrmann had notice of the relevant conduct.
 
 
 10
 Second, although the superseding indictment added a list of seventeen specific investors, the original indictment gave Dohrmann notice of each of those sales. The original indictment alleged that Invest America fraudulently sold debentures from June 1987 through May 1988. Each of the seventeen specific sales that are listed in the superseding indictment occurred during that period.
 
 
 11
 In light of these comparisons, there is virtually nothing in the superseding indictment of which Dohrmann did not receive notice in the original indictment.[1] Therefore, because the superseding indictment did not substantially broaden the charges, the statute of limitations was tolled by the original indictment and the superseding indictment in this case was timely. See Sears, 785 F.2d at 778. The district judge accordingly did not abuse his discretion by refusing to dismiss the superseding indictment.
 
 Pretrial Delay
 
 12
 We review de novo post-indictment speedy trial claims. United States v. Manning, 56 F.3d 1188, 1193 (9th Cir.1995).
 
 
 13
 The Supreme Court has adopted a balancing approach to speedy trial cases. Barker v. Wingo, 407 U.S. 514, 530 (1972). The Supreme Court has identified four relevant considerations: the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. Id.
 
 
 14
 Here, the delay was substantial, but the reasons for it were largely beyond the government's control. See Barker, 407 U.S. at 531. The bulk of the delay is attributable to the case's complexity and to a lack of government funding for the defense due to a funding crisis. Dohrmann waited a considerable time before asserting his right, and he has not shown that he was prejudiced by the delay. See United States v. Beamon, 992 F.2d 1009, 1013 (9th Cir.1993). In light of all the factors, the delay in Dohrmann's trial was not a constitutional violation.
 
 
 15
 Evidence of Invest America's Use Of Debenture Proceeds
 
 
 16
 We review for abuse of discretion the district court's decision to admit evidence. United States v. Yazzie, 59 F.3d 807, 810 (9th Cir.1995).
 
 
 17
 Dohrmann contends that the district court erred by refusing to strike from the superseding indictment paragraph fifteen regarding the offering memorandum's statement that 75% of the debenture proceeds would go to advertising. But, notwithstanding the fact that the memorandum may have been written without fraudulent intent and written before Dohrmann entered into the consent decree, it is reasonable to conclude that the later actual use of the offering memorandum, at a time when it no longer accurately stated the facts, was fraudulent. Therefore, the district court did not abuse its discretion by refusing to strike the allegations in paragraph fifteen and by allowing evidence at trial regarding Invest America's use of the debenture proceeds.
 
 
 18
 Substantial Evidence To Support Convictions
 
 
 19
 "In deciding whether there is sufficient evidence to support a conviction, we review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Tipton, 56 F.3d 1009, 1012 (9th Cir.1995), cert. denied sub. nom., Purmort v. United States, 116 S.Ct. 773 (1996).
 
 
 20
 Dohrmann contends that the government did not present sufficient evidence that he made statements or omissions "in connection with" all of the debenture sales that are listed in the superseding indictment, as the consent decree required. We disagree. The statements or omissions preceded the sales, and the trier of fact could properly have found a connection. The government was not required to show that each of the investors detrimentally relied on face-to-face fraudulent statements by Dohrmann. See Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 12 (1971). The district court did not err by concluding that substantial evidence supported Dohrmann's convictions on all counts.
 
 Sentence Increase
 
 21
 We review de novo the legality of a sentence that is imposed under the Sentencing Guidelines. United States v. Redmond, 69 F.3d 979, 980 (9th Cir.1995).
 
 
 22
 Here, the district court selected fraud as the offense in the Sentencing Guidelines that was most analogous to Dohrmann's crimes. Under the fraud guidelines, the base sentence is increased according to the level of financial loss attributed to the fraud. U.S.S.G. § 2F1.1 (1987).
 
 
 23
 Dohrmann argues that the district court erred by including in the loss calculation all of the debentures sales that occurred after the date of the consent decree. We conclude, however, that the district court did not clearly err by finding that a fraudulent scheme had arisen by the time of the consent decree. Moreover, the district court did not clearly err by including in the loss calculation debenture sales beyond the specific sales listed in the superseding indictment; again, there was evidence to support the district court's finding that a broader fraudulent scheme existed. Therefore, the district court did not err by basing the loss calculation on all of Invest America's debenture sales that took place after the date of the consent decree.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Robert E. Jones, United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This case does not involve nearly the level of change in indictments that occurred in United States v. Rounsavall, 905 F.Supp. 662 (D.Neb.1995), or in United States v. O'Neill, 463 F.Supp. 1205 (E.D.Penn.1979), the only two cases we have found in which superseding indictments were barred by limitations