**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

JOHN A. HICKEY,
          *Defendant-Appellant.*

No. 05-10004

D.C. No.
CR-97-00218-
WHA-02

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

JOHN A. HICKEY,
          *Defendant-Appellant.*

No. 06-10206

D.C. No.
CR-97-00218-
WHA-02

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
April 13, 2009—San Francisco, California

Filed September 2, 2009

Before: Stephen Reinhardt, John T. Noonan and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown;
Concurrence by Judge Reinhardt

12247

## COUNSEL

Ezekiel E. Cortez and Erin J. Lindquist, San Diego, California, for the appellant.

Vijay Shanker, United States Department of Justice Criminal Division, Appellate Section, Washington, D.C., for the appellee.

## OPINION

McKEOWN, Circuit Judge:

This appeal stems from a massive fraud scheme that resulted in protracted civil and criminal proceedings spanning more than ten years. John A. Hickey ("Hickey") and his business partner, Mamie Tang ("Tang"), induced over 700 individuals to invest approximately $20 million in two real estate development funds. Their plan was to purchase land in Northern California, prepare the land for residential development, and then resell the properties to developers at a profit. As it turned out, however, the investors were duped by false representations regarding land title, guarantees, and securitization of the funds. Forensic accounting also showed that Hickey and Tang appropriated money from the funds for personal use.

As the investment scam progressed, it devolved into a Ponzi scheme. Hickey used the money from later investors to pay earlier investors the "interest" they were owed. When the money ran out and the fraud was exposed, the investors had lost approximately $18.5 million.

When the investment scheme fell apart in mid-1994, the Securities and Exchange Commission ("SEC") filed a civil enforcement action against Hickey, resulting in a consent decree that included a $1.1 million disgorgement payment. The investors also obtained an as-yet-unpaid $10 million civil judgment. Hickey was indicted in July 1997.

Hickey challenges his conviction for mail fraud and securities fraud on multiple grounds, including jurisdiction, statute of limitations, and claimed evidentiary errors. He also appeals his 97-month sentence. We affirm his conviction and sentence.

ANALYSIS

## I. JURISDICTION

We consider first whether the district court lost jurisdiction to proceed because of Hickey's two interlocutory appeals to this court related to double jeopardy. Hickey asserts that his conviction must be reversed because the district court was without jurisdiction to conduct pretrial proceedings and trial. This argument stems from the general proposition that "[o]rdinarily, if a defendant's interlocutory claim is considered immediately appealable . . ., the district court loses its power to proceed from the time the defendant files its notice of appeal until the appeal is resolved." *See United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir. 1984). A careful review of the chronology of events and the proceedings leads us to reject Hickey's jurisdictional argument.

We turn to Hickey's first interlocutory appeal. Hickey filed a motion to dismiss on the ground that trying him criminally after the SEC civil enforcement action would amount to double jeopardy. Although the district judge originally assigned to the case, Judge Chesney, ruled in March 2002 that there was no double jeopardy problem with trying Hickey criminally, she declined to find that Hickey's double jeopardy claim was frivolous, which allowed Hickey to immediately appeal to this court. *See Abney v. United States*, 431 U.S. 651, 659 (1977); *United States v. Price*, 314 F.3d 417, 420 (9th Cir. 2002). Judge Chesney took a practical view of the situation: "I will not make a finding that the motion is frivolous . . . . I do not want to spend an inordinate amount of time trying a case that the court of appeals thinks should never have been tried."

On April 30, 2004, we dismissed Hickey's appeal for lack of appellate jurisdiction because his double jeopardy claim was not colorable. *United States v. Hickey*, 367 F.3d 888, 892-93 (9th Cir. 2004). Following issuance of the mandate on

August 11, 2004, Hickey's attorney, who claimed medical incapacity during this period, filed a motion to recall the mandate in order to file a petition for rehearing. The mandate was recalled on October 18, 2004, but was reissued on May 27, 2005, when the petition for rehearing was denied.

Meanwhile, in February 2004, Judge Alsup took over the case and, in the fall of that year, Hickey obtained new counsel. On December 14, 2004, Judge Alsup found that Hickey's double jeopardy claim was frivolous and ruled that the district court retained jurisdiction to proceed despite the recall of the mandate. Hickey then filed his second interlocutory appeal, this time challenging the December 14, 2004 ruling. This second interlocutory appeal was consolidated with Hickey's post-conviction appeal and is now before us. Hickey argues that not only did the district court lack jurisdiction between the time the mandate was recalled and reissued—October 18, 2004—May 27, 2005—but that it also lacked jurisdiction to try him because his second interlocutory appeal—challenging the December 14, 2004 jurisdictional ruling—was still pending during his trial. Although the district court heard some pretrial matters during the period between the mandate being recalled and then reissued, the case did not proceed to trial until well after the mandate had been reissued.

As we noted in *Claiborne*, the notion that a pending appeal strips the trial court of jurisdiction is a judicially-crafted rule designed "to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." 727 F.2d at 850. This protective approach is heightened in the case of a double jeopardy appeal in which the defendant is asserting a constitutional "right not to be tried." *See id.* Nonetheless, "[t]his concern is not as vitally involved when only pre-trial hearings proceed in the district court rather than the trial itself." *Id.* at 851.

The period relating to Hickey's first interlocutory appeal involved only pretrial matters and thus closely mirrors the

scenario in *Claiborne*, in which the trial judge issued pre-trial rulings while an interlocutory appeal was pending. Although Hickey challenges the court's jurisdiction to continue with pretrial matters, he offers no specifics and claims no prejudice. The reality is that the district court in Hickey's case made no pathbreaking rulings during this period. A review of the trial court docket sheet reveals that most of October 2004-May 2005 was taken up with scheduling and case management matters, counsel substitution and payment issues, and a plan for the identification of experts. Hickey contested none of these rulings when he proceeded to trial.

**[1]** Like *Claiborne*, because Hickey's interlocutory appeal was ultimately a losing one, any claimed error in proceeding with limited pretrial matters was harmless and "no useful purpose would be served by requiring that court to re-decide the pre-trial motions." *Id.* at 850. We decline to apply the divestiture rule in a slavish manner that ignores the reality of what happened in the trial court.

Although the error was harmless in this case, we want to impress upon district courts that acting before the mandate has issued or after the mandate has been recalled risks acting without jurisdiction and wasting judicial resources. *See United States v. DeFries*, 129 F.3d 1293, 1301-03 (D.C. Cir. 1997) (invalidating a trial which "took several months, consuming thousands of hours of court and lawyer time" because the mandate had not issued before the trial began).

**[2]** Hickey's effort to supplant the district court's jurisdiction through his second interlocutory appeal fares no better. The district court's December 14, 2004 ruling that it had jurisdiction to proceed with pretrial matters was not subject to interlocutory review and was not appealable until after Hickey's trial and conviction. *See United States v. Saccoccia*, 18 F.3d 795, 800-01 & n.8 (9th Cir. 1994) ("Courts have uniformly held that challenges to district court jurisdiction can be fully vindicated on post-judgment appeal and are thus not

subject to interlocutory appeal."). Filing an appeal from an unappealable decision does not divest the district court of decision. *Estate of Conners v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993). When the mandate reissued in Hickey's original interlocutory appeal on May 27, 2005, the district court once again had jurisdiction over the case and thus had authority to proceed with Hickey's trial.

## II.   Speedy Trial Act

[3] Hickey claims that his Speedy Trial Act rights were violated because the district court retroactively excluded time from the Speedy Trial Act "clock," resulting in his trial beginning after the 70-day limitation period. When Hickey was initially brought before a magistrate judge on July 17, 1997, the magistrate granted an "ends of justice" continuance under 18 U.S.C. § 3161(h)(7)(A), which excluded time from July 17, 1997, through August 12, 1997. Although the parties dispute whether there was a violation of the Speedy Trial Act, we do not need to figure out the timing details because Hickey acknowledges that there is no error if this stop clock period is credited.

The "ends of justice" exclusion of time under the Speedy Trial Act requires the court to "set[ ] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by granting such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Among other factors, the court must consider "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(7)(B)(ii). In the order excluding time, the magistrate stated that Hickey's "counsel cannot reasonably be expected to be ready for trial within the Speedy Trial Act's seventy day period" because the

77-page indictment charged Hickey with "massive fraudulent securities offerings and with misapplying and embezzling a substantial portion of the $20,000,000 raised in those offerings."

**[4]** Despite these findings, Hickey argued to the district court that the magistrate judge had failed to properly justify the continuance. In response and out of caution, the district court asked the magistrate judge to clarify his earlier findings, which he did in detail, consistent with his initial ruling. Because the magistrate judge did, in fact, consider the statutory factors in granting an "ends of justice" exclusion, allowing the magistrate to clarify those findings was not in error: " '[S]imultaneous ['ends of justice'] findings [are] unnecessary so long as the trial court later shows that the delay was motivated by proper considerations.' " *United States v. Ramirez-Cortez*, 213 F.3d 1149, 1154 (9th Cir. 2004) (quoting *United States v. Bryant*, 726 F.2d 510, 511 (9th Cir. 1984)) (alterations in original).

## III.   SUPERSEDING INDICTMENTS AND THE STATUTE OF LIMITATIONS[1]

**[5]** Four indictments were filed against Hickey. Hickey was originally indicted on July 16, 1997, on mail fraud and securities fraud charges. Two superseding indictments were issued, but they both omitted the securities fraud charges. Hickey claims that these superseding indictments stopped the tolling of the statute of limitations as to those charges. Therefore, he argues, when the securities fraud charges were included in the

---

[1]In addition to the statute of limitations argument discussed below, Hickey also claims that none of the conduct that resulted in his conviction for securities fraud relating to Fund I occurred within the five year statutory period before July 16, 1997, rendering his conviction invalid. Hickey did not raise this argument during trial. The statute of limitations is an affirmative defense that is waived if it is not raised at trial, so Hickey forfeited this argument. *See United States v. LeMaux*, 994 F.2d 684, 689 (9th Cir. 1993).

third superseding indictment on April 27, 2005, the statute of limitations period should be measured from that date, and not from the date of the original indictment. We review *de novo* this question of law. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 780 (9th Cir. 2002).

**[6]** The answer to Hickey's challenge is found in our precedent on tolling and indictments. It is well accepted that an indictment tolls the statute of limitations as to all charges contained in the indictment. *United States v. Clawson*, 104 F.3d 250, 250-51 (9th Cir. 1996). Significantly, "[a]n original indictment remains pending until it is dismissed . . .," *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990), and multiple indictments may simultaneously be pending against the same defendant in the same case, *United States v. Holm*, 550 F.2d 568, 569 (9th Cir. 1977) (per curiam).

**[7]** It follows from these cases that so long as the original indictment remains pending, a superseding indictment that omits a charge contained in the first indictment does not stop the tolling of the statute of limitations as to that charge. The central question is whether Hickey was fairly on notice of the charges. As we explained in *Pacheco*, 912 F.2d at 305 (quoting *United States v. Italiano*, 894 F.2d 1280, 1283 (11th Cir. 1990)):

> Notice to the defendant is the central policy underlying the statutes of limitation. If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him. That is, he knows that he will be called to account for certain activities and should prepare a defense.

**[8]** Apart from the fact that an indictment is pending until dismissed, here the intervening indictments contained the same factual allegations as the original indictment. Although the third superseding indictment reincorporated securities

fraud allegations, it did not broaden or substantially amend the original indictment. *Italiano*, 894 F.2d at 1282 ("A superseding indictment brought after the statute of limitations has expired is valid so long as the original indictment is still pending and was timely and the superseding indictment does not broaden or substantially amend the original charges.").

**[9]** Hickey's assertion that a superseding indictment that omits a charge against a defendant is essentially the same as dismissing that charge is inconsistent with criminal procedure. Under Federal Rule of Criminal Procedure 48(a), "the government may, *with leave of the court*, dismiss an indictment . . . ." (emphasis added). The requirement that the government obtain leave of the court to dismiss would be superfluous if the government could, in effect, dismiss a charge by simply omitting it from a subsequent indictment. Hickey's theory is premised on the view that the initial charges were no longer pending and had been "dropped" once they were omitted from the subsequent indictment. There is, however, no intermediate status in our case law between pending and dismissed. Either the charges remain pending or they have been dismissed, and the only way for the government to achieve dismissal is via leave of the court, which did not occur here. Hickey was fairly on notice that he could be tried for any of the offenses contained in the third superseding indictment because all of the indictments remained pending until trial, the factual predicate remained the same, and the charges were not substantially broadened.

**[10]** Our conclusion is consistent with case law from our sister circuits holding that the government may elect to proceed on any pending indictment, whether it is the most recently returned superseding indictment or a prior indictment. *See, e.g.*, in addition to the Eleventh Circuit's opinion in *Italiano* cited above, *United States v. Walker*, 363 F.3d 711, 715 (8th Cir. 2004) (both a superseding indictment and the original indictment remain pending and the government may go to trial on the original indictment); *United States v.*

*Vavlitis*, 9 F.3d 206, 209 (1st Cir. 1993) (an original indictment remains pending and can be used at trial even if a superseding indictment omits an element of a charged offense); *United States v. Bowen*, 946 F.2d 734, 736-37 (10th Cir. 1991) (a superseding indictment does not invalidate a preceding indictment and the government may proceed to trial on any pending indictment); *United States v. Drasen*, 845 F.2d 731, 732 n.2 (7th Cir. 1988) ("It is well established that two indictments may be outstanding at the same time for the same offense if jeopardy has not attached to the first indictment. The government may then select the indictment under which to proceed at trial."); *United States v. Stricklin*, 591 F.2d 1112, 1116 n.1 (5th Cir. 1979) ("Since the original indictment apparently was never dismissed, there are technically two pending indictments against Stricklin, and it appears that the government may select one of them with which to proceed to trial."); *United States v. Cerilli*, 558 F.2d 697, 700 n.3 (3d Cir. 1977) (both an original and superseding indictment may be pending at the same time and the government may choose which to proceed to trial under). Because all of the indictments against a defendant remain pending unless formally dismissed (at least until jeopardy attaches), the statute of limitations remains tolled for all of the charges in prior indictments, even if subsequent indictments omit those charges.

## IV. TRIAL ISSUES

### A. EXCLUSION OF EXPERT TESTIMONY

Hickey's expert witness, Stephen Roulac, testified at length about real estate finance—about the topic generally, market conditions, the reasonableness of Hickey's plan for the funds, whether the amount of money Hickey raised was reasonable given his stated plan, and whether the plan was likely to succeed. However, the district court barred him from testifying that he believed that if the SEC had not intervened, Hickey's investments would have been profitable and the investors would not have lost money. Hickey urges that this testimony

would have established that he did not have an intent to defraud investors.

**[11]** The district court did not abuse its discretion in excluding this limited portion of Roulac's proferred expert testimony. *See United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir. 2005). To begin, loss to investors is not an element of either mail fraud or securities fraud, nor is an intent to cause loss. *See United States v. Utz*, 886 F.2d 1148, 1151 (9th Cir. 1989) (for mail fraud, "[i]t is enough . . . that the government charge and the jury find either that the victim was actually deprived of money or property *or* that the defendant intended to defraud the victim of same.") (emphasis in original); *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986) (actual loss is not an element of securities fraud). Although Hickey is entitled to advance the claim that he did not intend to defraud the victims, his argument misunderstands the relevant intent—"[w]hile an honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all." *Benny*, 786 F.2d at 1417. In other words, even if Hickey genuinely believed his investment scheme would be profitable and would result in gains for his investors, he would still be guilty of securities fraud and mail fraud if he knowingly lied to investors about the risks associated with his plan. Therefore, the testimony was properly excluded.

## B.   JURY INSTRUCTIONS

Hickey argues that the district court "impermissibly invaded the province of the jury" by giving instructions that allowed the jury to convict Hickey even if the prosecution did not prove *mens rea,* and that the court compounded this problem by refusing to give a good faith instruction.

Hickey takes three individual jury instructions out of context and insists that they misstate the law, ignoring our case

law that " '[i]n reviewing jury instructions, the relevant inquiry is whether the instructions *as a whole* are misleading or inadequate to guide the jury's deliberation.' " *United States v. Garcia-Rivera*, 353 F.3d 788, 792 (9th Cir. 2003) (quoting *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999)) (emphasis added). As Hickey concedes, trial counsel failed to object to these instructions, so we review for plain error. *See United States v. Recio*, 371 F.3d 1093, 1099-1100 (9th Cir. 2004).

**[12]** The district court gave a proper *mens rea* instruction and it was clear that, in order to convict, the jury was required to find that Hickey had the requisite intent. Nothing in the jury instructions Hickey finds objectionable negates the *mens rea* instruction. Those instructions simply stated the law and did not relieve the government of its burden.

Hickey's related argument that he was entitled to a separate "good faith" instruction, in addition to the district court's other instructions on specific intent, is foreclosed by Ninth Circuit precedent: "[o]ur case law is well settled that a criminal defendant has no right to any good faith instruction when the jury has been adequately instructed with regard to the intent required to be found guilty of the crime charged . . . ." *United States v. Shipsey*, 363 F.3d 962, 967 (9th Cir. 2004) (internal citation and quotation marks omitted).

## V.  SENTENCING

**[13]** Hickey offers four separate grounds to overturn his sentence, none of which we embrace. Hickey argues the district court improperly applied a presumption that a within-guidelines sentence was reasonable. *See Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 596-97 (2007). While appellate courts may apply a presumption of reasonableness in reviewing a within-guidelines sentence, the Supreme Court has barred the district courts from applying such a presumption in

determining a sentence in the first instance.[2] *Id.* However, nothing in the record supports the claim that the district court did, in fact, apply such a presumption.

**[14]** Hickey argues that the district court impermissibly enhanced his sentence by fifteen levels based on the amount of the loss because the amount was not proven beyond a reasonable doubt to the jury. This argument fundamentally misunderstands the current state of constitutional law on sentencing. The relevant Sixth Amendment question is not, as Hickey claims, whether a judge found facts that were not proven beyond a reasonable doubt by the jury in the process of calculating the guidelines range. Rather, "the Sixth Amendment question . . . is whether the law *forbids* a judge to increase a defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede)." *Rita*, 551 U.S. 338, 352 (2007). Because the sentencing guidelines are advisory after *Booker*, the Sixth Amendment does not require that the loss be proved to a jury beyond a reasonable doubt. *See United States v. Booker*, 543 U.S. 220 (2005).

Hickey argues that his sentence will result in a significant overpayment to investors because the total amount of restitution he and Tang were ordered to pay exceeds the amount of loss by investors, less the disgorgement payment Hickey already made—$17, 454, 581. Tang was ordered to pay $12,266,090, and Hickey was ordered to pay $17,454,000. However, Tang and Hickey were ordered to pay joint and several restitution, a point that Hickey ignores in his brief, and hence there will be no windfall to investors.

**[15]** The district court ordered Hickey to pay restitution of $5000 per quarter while incarcerated and $500,000 per month upon release. Hickey did not object to the restitution schedule

---

[2]This court, however, has declined to adopt a presumption of reasonableness for within-guidelines sentences on appellate review. *See United States v. Carty*, 520 F.3d 989, 994 (9th Cir. 2008) (en banc).

at trial, so we review district court's finding for plain error. *See United States v. Zink*, 107 F.3d 716, 718 (9th Cir. 1997). Hickey's position is essentially that his own noncompliance with the presentencing procedure means that the district court committed plain error. Hickey failed to complete the financial information requested by the Probation Office so the court had limited information about his financial situation. See 18 U.S.C. § 3664(e) ("The burden of demonstrating financial resources of the defendant . . . shall be on the defendant."). Nonetheless, the district court was aware that Hickey had previously paid $1.1 million in the SEC enforcement action after insisting that he was unable to pay and that he was involved in a $1 billion real estate project in San Francisco. Hickey has not demonstrated that the district court committed plain error when it laid out the restitution schedule.

**AFFIRMED.**

---

REINHARDT, Circuit Judge, specially concurring:

I reluctantly concur in Judge McKeown's opinion. I recognize that, under the precedent cited in the opinion, both in and out-of-circuit, "superseding" has been given a meaning in the context of a criminal indictment that is the direct opposite of its meaning in every other known context.[1] This is, unfortunately, not the first occasion on which we have construed words in this manner. If "slight" may be equated with "substantial" and "another state" may include the "same state," *see United States v. Saavedra-Velazquez*, No. 08-10078, slip op. 11541, 11554-55 (9th Cir. Aug. 21, 2009) (Reinhardt, J., specially concurring), then we should not be surprised that a superseding indictment does not supersede anything at all.

---

[1]*See, e.g.,* Random House Dictionary of the English Language 1428 (1979) (defining "supersede" as "to replace . . . set aside . . . [or] supplant").

I do not favor depriving words of all meaning simply in order to reach a desired legal result. Here, I see no reason, rational or otherwise, to treat the word "superseding" as meaning "not replacing," as we have done before and as we do again here. An abundance of judicial creativity has been devoted to tasks like interpreting "another" to mean "the same";[2] "slight" to mean "substantial";[3] and "superseding" to mean "not superseding."[4] I propose redirecting that creativity to better uses, such as finding terms that actually mean what they appear to mean. We could start by using "second indictment" or "first additional indictment" to describe an indictment that follows the original indictment, but does not "supersede" it. Were we to do so, we might earn more public trust and respect than we are accorded now. Any additional amount, no matter how slight, *i.e.* substantial, would be most welcome.[5]

---

[2]*See Alden v. Maine*, 527 U.S. 706, 723-24 (1999) (reaffirming the holding of *Hans v. Louisiana*, 134 U.S. 1 (1890), that the Eleventh Amendment prohibition of suits "against one of the United States by Citizens of another State" applies to suits brought against a state by a citizen of the same state).

[3]*See United States v. Sarbia*, 367 F.3d 1079, 1086 (9th Cir. 2004) (holding that "the terms 'some act' or 'slight act,' as used in the Nevada caselaw, have the same operational meaning as 'substantial step,' as used in the traditional common-law definition of attempt"); *see also United States v. Saavedra-Velazquez*, No. 08-10078 (9th Cir. Aug. 21, 2009) (applying *Sarbia* to California's definition of attempt); *cf. United States v. Rivera-Ramos*, No. 08-10174 (9th Cir. Aug. 21, 2009) (adopting the Second Circuit's conclusion that "[t]he difference between the federal law's requirement of a 'substantial step' and the New York law's requirement of 'dangerous proximity' is . . . 'more semantic than real' " (quoting *United States v. Fernandez-Antonia*, 278 F.3d 150, 162-63 (2d Cir. 2002)).

[4]*See* Opinion at 12257-59 (collecting cases).

[5]Other ways, of course, would be to describe our function more honestly than representing that we simply apply law to facts and nothing more, and by acknowledging frankly that empathy is truly an essential quality for a jurist.