UNITED STATES of America,
Plaintiff–Appellee,

v.

Nelson ITALIANO,
Defendant–Appellant.

No. 89–3079.

United States Court of Appeals,
Eleventh Circuit.

Feb. 20, 1990.

John R. Lawson, Jr., Aileen S. Davis, Stephen O. Decker, Lawson, mcWhirter, Grandoff & Reeves, Tampa, Fla., for defendant-appellant.

Terry A. Zitek, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and ATKINS *, Senior District Judge.

KRAVITCH, Circuit Judge:

Nelson Italiano, convicted of mail fraud, appeals from the denial of his motion to dismiss the indictment. Italiano seeks dismissal on the ground that the statute of limitations for bringing the indictment had expired before the indictment was re-

turned. The district court found that the indictment was not barred by the statute of limitations because it alleged approximately the same facts as a previous indictment; therefore the previous indictment had given Italiano sufficient notice of the facts and charges against him. We affirm.

## BACKGROUND

On May 22, 1985, a federal grand jury in the Middle District of Florida returned a forty-five count indictment against thirty persons and corporations in connection with a widespread bribery scheme in Hillsborough County, Florida.[1] In Count IV of the indictment, Italiano was charged with a single count of mail fraud in violation of 18 U.S.C. § 1341. The gravamen of the charge was that Italiano had devised a scheme to defraud the citizens of the county of their right to the honest services of the Board of County Commissioners. Italiano moved to dismiss the indictment on the ground that the mail fraud statute was only intended to reach schemes designed to cause economic loss to the victims and not those schemes designed to deprive victims of their intangible right to good government. The district court denied that motion. Italiano's trial was severed from that of the other defendants, and in January of 1987, a jury found Italiano guilty of mail fraud.

In June of 1987, the Supreme Court decided *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which held that 18 U.S.C. § 1341 does not protect citizens from the fraudulent deprivation of intangible rights, but only from the fraudulent taking of money or property. On the basis of *McNally*, Italiano appealed his conviction to the Eleventh Circuit, and on February 22, 1988, a panel of this court reversed the conviction and vacated the judgment. The court found that Italiano's indictment was "fatally flawed" because it failed to allege that the victim of the scheme to defraud was deprived of

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The scheme ended in December of 1980.

money or property. *United States v. Italiano*, 837 F.2d 1480, 1483 (11th Cir.1988).

On August 18, 1988, less than six months after dismissal of the indictment, another federal grand jury returned a new mail fraud indictment against Italiano. This new indictment alleged that Italiano's participation in the bribery scheme defrauded the government of Hillsborough County of property in the form of a cable television franchise.

Italiano filed a motion to dismiss, alleging that the new indictment had been returned outside the five year statute of limitations for federal criminal offenses. The district court denied the motion. *United States v. Italiano*, 701 F.Supp. 205 (M.D. Fl.1988) and Italiano was again convicted for mail fraud.

Testimony at both trials focused on Italiano's role in a scheme to bribe the commissioners of Hillsborough County in order to obtain a cable television franchise for a company named Coaxial Communications of the Suncoast, Inc. ("Coaxial"). Coaxial was primarily interested in obtaining the cable franchise for the City of Tampa, Florida, but decided to establish a presence in the area by securing franchises in Hillsborough County. The Hillsborough County Board of County Commissioners had the final authority to award cable television franchise rights within the county. Italiano secured the support of County Commissioner Bean for Coaxial and introduced Bean to McGillicuddy, one of the owners of Coaxial. Bean and various other commissioners were given sums of money by Italiano and others in order to secure their support for Coaxial, and the contract between Coaxial and Hillsborough County was ratified in July of 1980. Apparently, McGillicuddy made it clear to Bean that he would sell the franchise if Coaxial failed in its efforts to obtain the Tampa franchise. Coaxial's efforts were in fact unsuccessful and McGillicuddy ultimately sold his franchise in Hillsborough County and left the area.

## DISCUSSION

The statute of limitations for non-capital federal crimes states that:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

18 U.S.C. § 3282. The purpose of the statutory bar is to protect defendants from "having to defend themselves against charges when the basic facts may have become obscured by the passage of time...." *Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 860, 24 L.Ed.2d 156 (1970). The statutory bar applies to all indictments whether they are original indictments, superseding indictments or new indictments.[2]

### A. The Tolling Effect of the Indictment

■ In certain circumstances, the filing of an indictment may serve to toll the statute of limitations for purposes of filing a superseding or new indictment after the limitations period has expired.

■ A superseding indictment brought after the statute of limitations has expired is valid so long as the original indictment is still pending and was timely and the superseding indictment does not broaden or substantially amend the original charges. *United States v. Grady*, 544 F.2d 598, 602 (2d Cir.1976). *See also, United States v. Edwards*, 777 F.2d 644, 649 (11th Cir.1985); *United States v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777, 779 (9th Cir.1986); *United States v. Friedman*, 649 F.2d 199, 203–04 (3rd Cir.1981). For purposes of the statute of limitations, the "charges" in the superseding indictment are defined not simply by the statute under which the defendant is indicted, but also by the factual allegations that the government relies on to show a violation of the statute.

---

2. A superseding indictment usually refers to an indictment that is returned while a valid indictment is still pending. A new indictment usually refers to an indictment returned after the pending indictment has been dismissed.

Notice to the defendant is the central policy underlying the statutes of limitation. If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him. That is, he knows that he will be called to account for certain activities and should prepare a defense. *See Grady*, 544 F.2d at 601.

 The case of a *new* indictment, brought after the limitations period has expired, is controlled by 18 U.S.C. § 3288, which provides that the indictment must be returned within a certain time after the original indictment is found defective:

> Whenever an indictment is dismissed for any error, defect, or irregularity with respect to the grand jury, or an indictment or information filed after the defendant waives in open court prosecution by indictment is found otherwise defective or insufficient for any cause, after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations.

18 U.S.C. § 3288.[3] The notice considerations that permit tolling in cases of *superseding* indictments apply in the case of *new* indictments as well. That is, the limitations period will only be tolled if the charges and allegations in the new indictment are substantially the same as those in the original indictment. The Ninth Circuit has held that the underlying concept of section 3288 is that if the defendant was first indicted within the limitations period, then *"approximately the same facts"* may be used for the basis of any new indict-

ment, if the earlier indictment runs into legal pitfalls." *United States v. Charnay*, 537 F.2d 341, 354 (9th Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 527, 528, 50 L.Ed.2d 610 (1976) (emphasis added) (quoting *Mende v. United States*, 282 F.2d 881, 883–84 (9th Cir.1960), *cert. denied*, 364 U.S. 933, 81 S.Ct. 379, 5 L.Ed.2d 365 (1961)). In sum, an untimely indictment can only be saved by the section 3288 exception if it does not broaden or substantially amend the original charges "tolled" by the previous indictment.

## B. The Language of the Two Indictments

In order to decide whether the charges and underlying facts in the two indictments returned against Italiano are sufficiently similar to provide him with notice, we must examine the language of those indictments.

### 1. The first indictment

Count IV of the indictment, under which Italiano was specifically charged with violating section 1341, states that Italiano and others "would and did engage in the acts set forth in paragraph 14 of COUNT TWO of this Indictment." Paragraph 14 of Count II, incorporated into Count IV, makes reference to a cable television franchise. It states that:

> Between in or about January, 1980 and in or about December, 1980, Nelson Italiano and others, corruptly offered, promised and gave Charles Frank Bean III and Robert E. Curry, public servants, and Charles Frank Bean III and Robert E. Curry, corruptly requested, solicited, agreed to accept and accepted, a benefit with an intent and purpose to influence an act which Nelson Italiano believed to be, and Charles Frank Bean III represented as being, within the official discretion of Charles Frank Bean III and Robert E. Curry *relating to Cable Television Franchise Agreement No. 80–563*, chargeable under Florida Statutes, Section 838.015 and an act of racketeering involving bribery as defined by Title 18, United States Code, Section 1961(1).

**3.** In November of 1988, after the second indictment in this case had been returned, 18 U.S.C. § 3288 was amended pursuant to the Anti–Drug Abuse Act of 1988, Pub.L. 100–690, Title VII, § 7081(a), 102 Stat. 4407.

(emphasis added). Count IV of the indictment also incorporates paragraphs 1 through 3 of Count III, which set forth the objects of the scheme.[4] Paragraph 2 of Count III states that Italiano and others:

knowingly and willfully devised and intended to devise a scheme and artifice to defraud the citizens of Hillsborough County, and the citizens of the State of Florida generally of their right to the following:

a. conscientious, loyal, faithful, disinterested and unbiased services, decisions, actions and performance of official duties of the Board of County Commissioners, Hillsborough County, Florida; and

b. to have the business of the Board of County Commissioners, Hillsborough County, Florida, and its affairs conducted honestly and impartially, free from deceit, craft, trickery, corruption, fraud, undue influence, dishonesty, conflict of interest, unlawful obstruction and impairments and in accordance with the laws of the State of Florida and Hillsborough County.

2. The second indictment

The second indictment alleges that Italiano and others:

knowingly devised and intended to devise, and aided and abetted the devising of, a scheme and artifice (a) to defraud the government of Hillsborough County, Florida, of money and property, that is:

(1) cable television franchise;

(2) the salaries, emoluments, and services of elected Commissioners of Hillsborough County, Florida;

(3) the value and proceeds of bribes paid to elected members of the Board of County Commissioners of Hillsborough County, Florida to induce them to violate their duty to the government and citizens of Hillsborough County,

Florida, honestly, impartially, and free from deceit, graft, corruption, fraud, undue influence, dishonesty, and bribery;

and (b) for obtaining from the government of Hillsborough County money and property, namely, a cable television franchise, by means of false and fraudulent pretenses, representations and promises, . . . .

Prior to trial, the government abandoned the theories of fraud listed under (2) and (3) and proceeded to trial only on the allegation that the government was deprived of a cable television franchise.[5]

*C. Comparison of the Two Indictments*

■ The first and second indictments charge the same statutory violation, the same mailing in furtherance of the scheme, and the same underlying transaction for the bribe. The difference, as Italiano stresses, is in the objects of the schemes alleged in each indictment: the first alleges a scheme to deprive the county of good government, the second alleges a scheme to deprive the county of a cable television franchise. Italiano argues that, in keeping with these different objectives, the first indictment alleged "pure good government facts" while the second indictment alleged "money and property" facts. Accordingly, he states that the first indictment provided "good government notice" but did not provide "money and property notice."

We have no quarrel with Italiano's contention that the *objects* of the schemes alleged in the first and second indictment are very different. Indeed, a panel of this court, finding the first indictment invalid, explained at length that

[t]he allegations in the indictment, even given a broad interpretation, are only susceptible of one interpretation: that the citizens of Hillsborough County were deprived of their intangible right to "good government."

---

4. Count III in turn incorporates paragraphs 3 through 11 of Count I of the indictment, describing the manner and means of the scheme.

5. Subsequently, in a case involving another member of the Hillsborough bribery scheme, the Eleventh Circuit held that indictment language identical to the allegation under (2) and (3) in the instant indictment did not allege a deprivation of property rights under *McNally*. *United States v. Goodrich,* 871 F.2d 1011 (11th Cir.1989).

*Italiano,* 837 F.2d at 1486. Nowhere does the first indictment specifically state that the *object* of the scheme was to defraud the government of a cable television franchise. In contrast, the second indictment, returned post-*McNally,* deliberately avoids reliance on a good government theory and alleges instead that the point of the scheme was to deprive the government of property in the form of a cable television franchise.[6]

Our finding that the alleged objectives of the scheme differ between the two indictments does not end our inquiry. For, in deciding whether the first indictment tolled the limitations period, the crucial inquiry is whether approximately the same facts were used as the basis of both indictments. If so, Italiano would have been put on notice within the limitations period of the charges on which he was ultimately convicted. In characterizing the facts of the first indictment as "good government facts" and the facts of the second indictment as "money and property facts," Italiano implies that the *object* of the scheme determines the nature of the facts underlying the scheme. We disagree. The facts are the sequence of actions that Italiano performed as part of a scheme to secure a television franchise for Coaxial. These facts are the same in both indictments.

Italiano relies heavily upon *United States v. O'Neill,* 463 F.Supp. 1205 (E.D. Pa.1979), to argue that the factual dissimilarity of the two indictments is fatal to the second indictment. *O'Neill* involved a defendant indicted under 18 U.S.C. § 1014 for making false statements in relation to an application for a loan at a federally insured bank in order to influence the bank to approve the loan. A superseding indictment was issued outside of the limitations period. Although both the original and

superseding indictments were based on the same transaction, the *O'Neill* court dismissed the superseding indictment, finding that the indictments were not based on "approximately the same facts."

We agree with the district court that the present case can easily be distinguished from *O'Neill.* In *O'Neill,* the superseding indictment involved a different false statement from the two false statements described in the first indictment. The first indictment stated that O'Neill falsely represented to the bank that the insurance policies submitted as security for the loan were in full force and effect. The second indictment stated that O'Neill falsely represented to the bank that the insurance policies submitted as security had a future cash surrender value and that they had been assigned to him.

The *O'Neill* court found that "[t]he charge in the first indictment contains no mention of the specific misrepresentations charged in the second indictment. If anything, the first indictment would serve to draw the defendant's attention away from the misrepresentations alleged in the superseding bill." *Id.* at 1207. The court concluded that "[t]he original indictment therefore did not put the defendant on notice that he might face a revised indictment alleging two quite different misrepresentations." *Id.* at 1208.

Unlike *O'Neill,* the second indictment in this case did not introduce any material new facts not found in the original indictment.[7] For this reason, we conclude that the first indictment provided sufficient notice of the actions which allegedly constituted criminal conduct and of the type of evidence that the government would introduce at trial. We see no way in which any disparity between the first and second in-

---

**6.** As Judge Owens noted in his dissent to this court's prior opinion in *Italiano,* franchises are considered property both generally and specifically under Florida law. *Italiano,* 837 F.2d at 1493 (citing 27 Fla.Jur.2d Franchises From Government § 2 (1981)). In the words of Judge Owens:

Clearly the cable television franchise held by the County of Hillsborough for the people of that county to be awarded to some commercial entity is "property," and the attempt by

appellant to secure the cable television franchise by bribery is a scheme to deprive the county and its people of that property.

*Id.*

**7.** The second indictment did identify the recipients of the cable television franchise and mentioned Jerry Bowmer as an unindicted co-schemer. We agree with the government that these two changes are insignificant.

dictments hindered Italiano's understanding of the conduct for which he would be held accountable or his ability to prepare a defense for that conduct. *See Grady*, 544 F.2d at 601.[8]

■ Italiano seeks to support his assertion that the indictments are factually dissimilar by noting that the first indictment did not withstand *McNally* scrutiny, but the second one did. He argues that if the indictments *were* factually similar, as the government claims, then the first one would not have been dismissed. He implies that substantive notice could *only* have been achieved if the first indictment had alleged facts sufficient to allow it to be upheld under *McNally*. We disagree with Italiano's attempt to equate indictments invalid under *McNally* with indictments insufficient to toll the statute of limitations and note that at least two other courts have rejected the same argument.

In *United States v. Davis*, 714 F.Supp. 853, 864 (S.D.Ohio 1988), the district court was faced with the issue presently before this court. The *Davis* court held that a superseding indictment returned after a first indictment was found invalid under *McNally* did not impermissibly broaden the language of the indictment where the superseding indictment charged the same acts and offenses and differed only in the legal theory stated. The court wrote that "[a]lthough the government had to abandon the intangible rights theory, it does not follow that a simple change of theory automatically bars reindictment." *Id.*[9]

In *United States v. Lytle*, 677 F.Supp. 1370 (N.D.Ill.1988), the court found that an indictment for mail fraud, dismissed on the basis of *McNally*, provided sufficient notice to the defendant to render a second indict-ment timely because each of the underlying factual allegations in the indictment was the same. *Id.* at 1377. The *Lytle* court held that the first indictment satisfied the notice requirement because only the *form* and not the *substance* of the claim had changed. *Id.* at 1376.

■ Italiano seeks to distinguish *Lytle* on the grounds that the first indictment in *Lytle* made *some* mention of money or property fraud whereas the first indictment in his case alleged only a scheme to defraud of good government. We find the reasoning in *Lytle* persuasive and Italiano's efforts to distinguish it unconvincing. If we were to accept Italiano's argument, then section 3288 would be rendered essentially useless in correcting defects in indictments that stem from legal errors.[10]

In sum, the court finds Italiano's attempt to distinguish between one type of notice that he terms "good government notice" and another type of notice that he terms "money and property notice" unavailing. Italiano was aware from the first indictment that he was on trial for his part in the scheme to bribe the commissioners to vote for Coaxial as the recipient of the cable television franchise. The only difference between the two indictments is the alleged objective of the scheme. This is not enough to deprive Italiano of notice and take the second indictment out of the section 3288 exception. Accordingly, the order of the district court denying Italiano's motion to dismiss the indictment is AFFIRMED.

---

**8.** *See also, United States v. Gengo*, 808 F.2d 1, 3 (2d.Cir.1986) (second indictment does not substantially change original charges where initial indictment informs defendant that he would have to account for alleged role in particular tax evasion schemes and later indictment adds conspiratorial object to defraud IRS related to exact same evasion schemes).

**9.** On appeal of this decision, the Sixth Circuit declined to decide the issue, finding that the appeal was interlocutory. *United States v. Davis*, 873 F.2d 900, 908 (6th Cir.1989).

**10.** We agree with other courts of appeals that have addressed the issue that § 3288 is available to correct legal defects as well as grand jury defects or irregularities. *See Charnay*, 537 F.2d at 355; *Davis*, 714 F.Supp. at 864; *see also, United States v. Macklin*, 535 F.2d 191, 193 (2d Cir.1976) (section 3288 applies when an indictment is dismissed "for any reason whatever"); *cf. United States v. Beard*, 414 F.2d 1014, 1017 (3d Cir.1969) (implying that § 3288 allows reindictment after indictment is dismissed for failure to allege element of crime).