[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 26, 2001
THOMAS K. KAHN
CLERK

_____

No. 99-4190

_____

D.C. Docket No. 98-10007-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID RATCLIFF,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 26, 2001)**

Before CARNES and MARCUS, Circuit Judges, and HAND[*], District Judge.

CARNES, Circuit Judge:

_____

[*]Honorable William Brevard Hand, U.S. District Judge for the Southern District of Alabama, sitting by designation.

David Ratcliff was convicted of conspiring to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963, and of conspiring to possess marijuana with the intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and 846. His convictions were based on a superseding indictment which Ratcliff argues should have been dismissed as barred by the applicable five-year statute of limitations, 18 U.S.C. § 3282. Ratcliff admits that the initial indictment brought against him was timely, but maintains that it did not toll the statute of limitations with respect to the superseding indictment, which was brought outside of the limitations period, because the superseding indictment materially broadened or substantially amended the initial indictment. We agree.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

On April 8, 1998, a federal grand jury sitting in the Southern District of Florida returned a three-count indictment against Ratcliff and co-defendant Albert Channell. In the indictment, the government charged Ratcliff and Channell with conspiracies "[b]eginning in or about late 1992, and continuing through April 1993" to import marijuana (Count I), and to possess marijuana with the intent to distribute it (Count II). The defendants were also charged with attempting to import marijuana "[o]n or about April 7, 1993" (Count III). Other than the dates of

2

the alleged criminal activity and the allegation that the crimes took place at Key West, Florida, the indictment was devoid of factual detail.

Pursuant to the initial indictment, Ratcliff was arrested on April 10, 1998. At his initial appearance, the Assistant United States Attorney described the indictment against Ratcliff as follows:

> This defendant is charged in a three-count indictment with narcotics offenses for having participated in the attempted smuggling, and having conspired to smuggle approximately 3,000 pounds of marijuana some five years ago.

The AUSA then went on to describe the alleged attempt to smuggle marijuana from Jamaica to the Florida Keys in 1993. He made no mention of any efforts by Ratcliff or anyone else to smuggle drugs into the United States before late 1992.

Following Ratcliff's arrest, the government continued its investigation and learned of Ratcliff's involvement in several drug smuggling ventures that had taken place in the 1980s. On August 19, 1998, a grand jury returned a superseding indictment against Ratcliff and Channell. Count III remained unchanged, still charging Ratcliff and Channell with attempted importation of marijuana on or about April 7, 1993. Counts I and II, however, no longer charged the defendants with two conspiracies occurring in 1992 and 1993, but instead charged Ratcliff (but not Channell) with two conspiracies "[b]eginning in 1980 and continuing

3

through 1993." The new Counts I and II charged Ratcliff with violating the same statutes as the first two counts of the initial indictment had charged.

After the superseding indictment was handed down in August of 1998, Ratcliff moved the district court to dismiss it on statute of limitations grounds. He pointed out that the superseding indictment was returned more than five years after the alleged criminal actions that it charged, and he argued that the statute of limitations had not been tolled by the existence of the initial indictment because the superseding one broadened and substantially amended the two conspiracy counts of the initial indictment.

Ratcliff also made a motion for a bill of particulars with respect to the superseding indictment. In response to that motion, the government identified fourteen individuals whom it alleged had participated in the conspiracies charged in Counts I and II of the superseding indictment. Co-defendant Channell was not included as one of those fourteen co-conspirators, even though he had been charged with conspiracy in the initial indictment and even though he was charged with attempted importation of marijuana in Count III of both indictments.

Before the trial of Ratcliff and Channell started, Ratcliff again argued to the court that the superseding indictment was untimely and should have been

4

dismissed on statute of limitations grounds. The district court rejected that argument, again denying Ratcliff's motion to dismiss.

On the morning of the second day of trial, Channell agreed to plead guilty to the misdemeanor offense of attempted possession of marijuana and to testify as a witness against Ratcliff. That prompted Ratcliff to move for a mistrial because of Channell's change of plea and the fact that he would be testifying despite not having been sequestered. The district court denied Ratcliff's motion for a mistrial.

Before the jury was instructed, Ratcliff again brought up the statute of limitations issue, and he requested that the jury be told that it must find that a criminal act was committed within five years before the date of the superseding indictment, instead of within five years before the initial indictment. The district court again rejected Ratcliff's position, ruling that the superseding indictment related back to the initial indictment for statute of limitations purposes. Ratcliff objected to that jury instruction, and he renewed his objection.

After more than a day of deliberations, the jury indicated that it was unable to come to agreement on Count III of the indictment, which charged attempted importation in April 1993, but that it had reached a unanimous decision on the two conspiracy counts. The court instructed the jury to complete the verdict form with

5

respect to the first two counts and to return for additional deliberations on Count III. The jury did so, and eventually reached a verdict on that count as well. The jury found Ratcliff guilty of both conspiracy counts (Counts I and II), but acquitted him on Count III, which is the only count in the superseding indictment that had remained unchanged from the initial indictment.

During the sentencing hearing, Ratcliff argued to the district court that only events from 1992-93 should be considered for purposes of the sentencing guidelines because, he argued, the evidence at trial indicated that the activities from the 1980s were part of a different conspiracy and prosecution of them was barred by the statute of limitations. The district court rejected this argument and, based on the combined amount of drugs involved in all of the drug smuggling ventures from the 1980s through 1993, sentenced Ratcliff to 210 months of incarceration, 5 years of supervised release, and a $200 assessment.

## B. FACTUAL HISTORY

This case grew out of an investigation of a dead body found in the water off of Key West in April of 1993. During the sentencing hearing, the government explained the genesis of the case against Ratcliff as follows:

> This case started out, we indicted in April 1998 only as a result of this
> defendant's refusal to cooperate in 1993 with Detective Phil Harrold
> of the Monroe County Sheriff's Office who was conducting a
> homicide investigation due to the discovery of the body of Mark

6

Cotter at Gulf Stream.

> The detective was conducting not a drug investigation, but a homicide investigation, discovered the reasons and wherefores of the death of Mark Cotter and the disappearance of the crew member aboard the vessel LITTLE JOE. This defendant chose then in 1993 to lie to detective Harrold about his knowledge of those events . . . .

While investigating the events surrounding the death of Mark Cotter, law enforcement authorities uncovered evidence of a plot to smuggle marijuana into the country from Jamaica in 1993 using a boat named the Little Joe.

Although the government argues that several earlier drug smuggling ventures from the 1980s were part of the same conspiracy with the Little Joe episode in 1992-93, the government clearly was focused only on the Little Joe incident when the initial indictment was returned. The initial indictment itself reflects that focus, alleging as it does conspiracies "[b]eginning in or about late 1992, and continuing through April 1993." Furthermore, an affidavit in support of a search warrant, signed by the case agent on the same day that the initial indictment was returned, focuses strictly on the Little Joe incident in 1992 and 1993 in explaining the probable cause for searching Ratcliff's residence. And finally, if there were any doubt as to the subject of the initial indictment, it would be dispelled by the prosecuting attorney's account, during the sentencing hearing, of what the initial indictment had covered, or not covered:

> We indicted the case in April 1998, some five years [after the investigation of the death of Mark Cotter and the surrounding circumstances]. Again, Mr. Ratcliff had the opportunity to resolve the issues. He was charged with that one count, attempted importation of marijuana from Jamaica. <u>He wasn't charged with what he was eventually convicted of on the superseding indictment</u>. He could have resolved that one charge then when he was indicted just for the one attempted smuggling. Again, he chose not to.
>
> The case proceeded as cases will. We reindicted when we had sufficient evidence through the testimony of Eddie Roberts to include all the smuggling ventures of Mr. Ratcliff had involved himself with his friends and family from all over Key West for the last 13 years, 1980 to 1993.

(emphasis added). In those comments, the government admitted that the facts underlying the conspiracies charged in the initial indictment were not the same as those underlying the charges on which Ratcliff was convicted.

The initial indictment covered only one incident of attempted drug smuggling, but the superseding indictment, and the evidence presented at trial, went considerably further. While the initial indictment alleged incidents that occurred from late 1992 through April 1993, a period of only six or seven months, the superseding indictment charged Ratcliff with participating in conspiracies spanning 13 years. At trial, the government presented evidence indicating that Ratcliff became involved in drug-smuggling beginning in 1980. The evidence showed that the smuggling ventures that occurred in the 1980s were part of a three-way partnership between Defendant Ratcliff, Eddie Roberts, and the defendant's

8

brother Frank Ratcliff. Eight government witnesses, including Roberts,[1] testified concerning the smuggling activities which took place between 1980 and 1989. According to those witnesses, Ratcliff was involved in seven smuggling ventures during that time period.

According to the evidence at trial, all but one of the smuggling attempts in the 1980s were organized and carried out in pretty much the same way.[2] Two people would take an airplane to Jamaica, where they would pick up large quantities of marijuana. The marijuana would then be dropped from the plane into a designated spot in the ocean, where it would be picked up by other members of the conspiracy waiting below in a boat. The marijuana was then brought back to Key West and divided up among the co-conspirators. With the exception of the first venture in 1980, which only involved 80-100 pounds of marijuana, most of other episodes in the 1980s each involved attempts to import approximately 800 pounds of marijuana. The evidence at trial showed that at least fifteen individuals

---

[1]In a case not involving Ratcliff, Eddie Roberts was convicted in 1995 of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, and he was sentenced to 240 months of incarceration. In exchange for his cooperation in this case, the government agreed to move for a reduction in Roberts' sentence, and its motion was subsequently granted. Ratcliff contends that the government's deal with Roberts was unlawful, and that Ratcliff's conviction should be reversed on that basis. Because we find that the conviction is due to be reversed for other reasons, we do not reach this issue.

[2]The only operation which did not follow the usual pattern involved the use of a boat named the Miss Pixie to import approximately 1200 pounds of marijuana from Jamaica in 1985. The Miss Pixie episode differed from the others in that it involved a larger quantity of drugs and did not employ the use of an airplane.

were co-conspirators in the various drug-smuggling operations in the 1980s. None of the co-conspirators from the 1980s who testified indicated that Ratcliff had participated in drug-smuggling after 1989.

The government's evidence concerning the 1993 Little Joe venture, the one clearly covered by the initial indictment, was more limited. The only witnesses to testify concerning Ratcliff's involvement in smuggling in 1992 and 1993 were Philip Beaty and Albert Channell. Channell, Ratcliff's co-defendant who pleaded guilty during the trial to a misdemeanor attempted possession charge, testified that he first discussed smuggling with Ratcliff starting in the middle of 1992. He related how Ratcliff purchased the Little Joe to use in the venture, and that the boat was stored at Ratcliff's house so repairs could be made on it. According to Channell, Ratcliff arranged to have Jerry Nulisch captain the Little Joe, and the profits from the venture were to be split among Ratcliff, Frank Ratcliff, Nulisch, and himself.

Beaty testified that he had observed the Little Joe at Ratcliff's house, and that he saw Ratcliff performing repairs on the boat. Beaty also said that Ratcliff had informed him the Little Joe would be used to "run a load from Jamaica." Beaty testified he wanted to invest in the Little Joe venture, but had not been permitted to do so. On cross-examination, Beaty admitted that within a week of

10

the discovery of Cotter's body in 1993, he had written a letter which was discovered in a trash can at his house by police officers. The letter stated that the Little Joe venture was one of Beaty's smuggling ventures and that Beaty had lost a boat. Beaty said that the statements in the letter were lies written to convince other individuals with whom he was engaged in drug transactions to pay him money that they owed him.

The government also put forward circumstantial evidence concerning the Little Joe venture. Darlene Gircsis testified she sold the Little Joe to Ratcliff, even though the title to the boat indicated that Harold Gircsis had sold the boat to Nulisch. Paul Layman, a Senior Special Agent with the Customs Department, presented evidence that Ratcliff had traveled on an Air Jamaica flight from Jamaica to Miami on April 14, 1993, two days after Mark Cotter's dead body was found in the ocean. Agent Layman also testified about several photographs seized from Ratcliff's home which depicted various scenes in Jamaica, marijuana plants, a building containing marijuana, and a crashed aircraft engine. Ratcliff appeared in some of those photographs.

Frank Ratcliff, the only defense witness, admitted that he and the defendant had been involved in drug-smuggling throughout the 1980s, but he insisted that neither of them had been involved in drug smuggling since 1989. Frank further

11

testified that he worked closely with his brother and would have been aware if Ratcliff had begun smuggling again after 1989. He stated that Ratcliff had purchased the Little Joe in 1992 in order to fix it up and sell it. Frank Ratcliff further testified that Channell was supposed to purchase the Little Joe from Ratcliff to use for fishing. He testified that neither he nor Ratcliff had conspired with Channell to smuggle drugs on the Little Joe.

The evidence at trial shows the breadth of the conspiracy charges brought against Ratcliff. Instead of conspiracies spanning only six or seven months in 1992 and 1993, as charged in the initial indictment, the government sought to prove Ratcliff's involvement in drug-smuggling over the course of thirteen years. Instead of one incident of smuggling, the government presented evidence that Ratcliff was involved in at least eight drug smuggling ventures (the Little Joe and seven others). Instead of a conspiracy involving, at most, five individuals, the government proved that Ratcliff conspired with, at least, fifteen other people. Instead of a conspiracy involving the attempted importation of 1,500 pounds of marijuana, the government proved that Ratcliff was involved in the importation or attempted importation of approximately 6,800 pounds of marijuana.

## II. DISCUSSION

The issue before us is a narrow one: whether the superseding indictment returned in this case materially broadened or substantially amended the two conspiracy counts (Counts I and II) of the initial indictment. If so, it was untimely and should be dismissed. The parties agree that the statute of limitations applicable to the charges against Ratcliff is five years, as set out in 18 U.S.C. § 3282. They also agree that Ratcliff's proven criminal activity ended, at the latest, by April of 1993; that the initial indictment was returned within the limitations period on April 8, 1998; and that the superseding indictment was returned on August 19, 1998. The parties part company, however, on the issue of whether the initial indictment tolled the statute of limitations with respect to the superseding indictment, thereby making it timely.

In discussing statutes of limitations, this Court has recognized that "[t]he purpose of the statutory bar is to protect defendants from 'having to defend themselves against charges when the basic facts may have become obscured by the passage of time . . .'" United States v. Italiano, 894 F.2d 1280, 1282 (11th Cir. 1990) (quoting Toussie v. United States, 397 U.S. 112, 114-15, 90 S. Ct. 858, 860 (1970)). "Statutes of limitations, both criminal and civil, are to be liberally interpreted in favor of repose." United States v. Phillips, 843 F.2d 438, 443 (11th Cir. 1988) (citations omitted). "In the criminal law area, such an interpretation

13

protects the defendants' right to be free from defending against overly stale criminal charges." Id. The policies underlying statutes of limitations are "grounded in concepts of due process." United States v. O'Bryant, 998 F.2d 21, 24 (1st Cir. 1993).

Although "[t]he statutory bar applies to all indictments whether they are original indictments, superseding indictments or new indictments," we recognized in United States v. Italiano, that "[i]n certain circumstances, the filing of an indictment may serve to toll the statute of limitations for purposes of filing a superseding or new indictment after the limitations period has expired." 894 F.2d 1280, 1282 (11th Cir. 1990). We held that:

> A superseding indictment brought after the statute of limitations has expired is valid so long as the original indictment is still pending and was timely and the superseding indictment does not broaden or substantially amend the original charges.

Id. (citations omitted). See also United States v. Edwards, 777 F.2d 644, 649-50 (11th Cir. 1985) (holding that superseding indictment that did not broaden original indictment was not barred); Phillips, 843 F.2d at 442 n.2 (same). Our sister circuits that have addressed this issue have reached similar conclusions. See O'Bryant, 998 F.2d at 23 (1st Cir. 1993) ("[A] superseding indictment which supplants a timely-filed indictment, still pending, is itself to be regarded as timely vis-a-vis a given defendant so long as it neither materially broadens nor substantially amends

14

the charges against the defendant."); United States v. Smith, 197 F.3d 225, 228-29 (6th Cir. 1999) (same); United States v. Schmick, 904 F.2d 936, 940-41 (5th Cir. 1990) (same); United States v. Pacheco, 912 F.2d 297, 305 (9th Cir. 1990) (same); United States v. Jones, 816 F.2d 1483, 1487 (10th Cir. 1987) (same); United States v. Friedman, 649 F.2d 199, 203-04 (3d Cir. 1981) (same); United States v. Grady, 544 F.2d 598, 601-02 (2d Cir. 1976) (same).

Given our precedent, the result in this case turns on whether the superseding indictment against Ratcliff "broaden[ed] or substantially amend[ed] the original charges." Italiano, 894 F.2d at 1282 (citations omitted). In making this determination, we are guided by Italiano's discussion of the policy considerations underlying the statute of limitations:

> Notice to the defendant is the central policy underlying the statutes of limitation. If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him. That is, he knows that he will be called to account for certain activities and should prepare a defense.

Id. at 1283. See also Smith, 197 F.3d at 229 ("Notice to the defendants of the charges, so that they can adequately prepare their defense, is the touchstone in determining whether a superseding indictment has broadened the original indictment."). In determining whether a defendant had notice of the charges against him, we do not confine our inquiry to the statutes under which the

15

defendant was charged. "For purposes of the statute of limitations, the 'charges' in the superseding indictment are defined not simply by the statute under which the defendant is indicted, but also by the factual allegations that the government relies on to show a violation of the statute." Italiano, 894 F.2d at 1282. Indeed, as we explained in Italiano, "the crucial inquiry is whether approximately the same facts were used as the basis of both indictments." Id. at 1285.

When we compare the facts underlying the initial and the superseding indictments in this case, we readily conclude that the superseding indictment materially broadened or substantially amended the two conspiracy charges (Counts I and II). As we have already discussed, the differences in scope between the conspiracy charges in the initial and in the superseding indictments are dramatic. The most obvious difference, and the primary one appearing on the face of the indictments, is the change in the time period of the alleged conspiracies -- a change which expanded the length of the conspiracies by at least twelve years. The superseding indictment required Ratcliff to defend himself against a conspiracy involving at least eight separate smuggling ventures with fifteen or more co-conspirators, instead of just the one episode with five co-conspirators charged in the initial indictment. The combined object of the various activities encompassed by the superseding indictment was the importation of approximately 6,800 pounds

16

of marijuana, while the (unsuccessful) activity encompassed in the initial indictment involved, at most, 1,500 pounds of marijuana.

This is not a case in which "the superseding indictment contains slightly more detail in terms of overt acts." O'Bryant, 998 F.2d at 24 (holding that superseding indictment's inclusion of additional details concerning overt acts involved in conspiracy did not materially broaden or substantially amend charges). Instead, the amended charges contained in the superseding indictment substantially broadened the scope of the charged conspiracies and dramatically altered the case against which Ratcliff had to defend himself. The government itself acknowledged this fact when it conceded at the sentencing hearing that:

> We indicted the case in April 1998 . . . . [Ratcliff] was charged with that one count, attempted importation of marijuana from Jamaica. He wasn't charged with what he was eventually convicted of on the superseding indictment.

(emphasis added). That concession, and the facts which compel it, defeats the government's position.

Not willing to admit defeat, the government puts forward arguments that the changes made by the superseding indictment were immaterial. First, it argues that the initial indictment provided Ratcliff with sufficient notice of the charges on which he was convicted. We disagree. Although the initial indictment put Ratcliff on notice of the statutes under which he was to be convicted, nothing in the initial

17

indictment indicated to Ratcliff that he might have to defend against the two broad, multi-year conspiracy charges on which he was eventually convicted. To the contrary, the only factual allegations in the initial indictment clearly informed Ratcliff that the conspiracies with which he was charged began "in or about late 1992, and continu[ed] through April 1993." We do not believe that the initial indictment provided Ratcliff with notice that he was actually charged with a thirteen-year-long conspiracy (or two) involving numerous transactions that had occurred long before the dates alleged in that indictment.

We find equally unavailing the government's argument that the charges were not broadened because there was a "continuity of object" between the charges, i.e., all conspiracy charges involved the attempted importation of marijuana, and a continuity of participants between the charged conspiracies. While such considerations are relevant to deciding whether charges have been materially broadened or substantially amended, they are not determinative in this case. As for the continuity of object between the charged conspiracies, we do not agree that once a single drug-smuggling conspiracy is charged, the government is free to come back and argue that the charge encompasses all other drug conspiracies – regardless of the underlying facts or relation to the original charge – simply because the "object" of the conspiracies is the same. In Italiano, we made clear

18

that we do not concern ourselves with the formalities of charges such as the statutes involved or the "objectives of [a] scheme." Italiano, 894 F.2d at 1285. "[T]he crucial inquiry," we explained, "is whether approximately the same facts were used as the basis of both indictments." Id. In that case, the defendant "implie[d] that the object of the scheme determine[d] the nature of the facts underlying the scheme," and we disagreed. Id.

Similarly, the continuity of participants does not persuade us that the changes to the conspiracy counts against Ratcliff were immaterial or insubstantial. The government contended at oral argument that there was substantial overlap of participants between the drug-smuggling transactions of the 1980s charged in the superseding indictment and the Little Joe episode in 1992-93, which was charged in the initial indictment. It stated that Nulisch, Frank Ratcliff, Danny Bosco, and Philip Beaty (none of whom were charged in either indictment) were all involved during both time periods. The degree of overlap in co-conspirators is not as substantial as the government suggests, however. Of the seven ventures from the 1980s, the evidence showed that Nulisch (the captain of the Little Joe), was involved in only one (as captain of the Miss Pixie in 1985). As for Frank Ratcliff, the government admitted that it had no knowledge of his involvement in the Little Joe venture (the one covered by the initial indictment) prior to Channell's

19

testimony at trial implicating him. The extent of Bosco's alleged involvement in the Little Joe venture is his notarization of the sale documents related to the boat, which the government alleged were falsified in order to protect Ratcliff. Finally, the only evidence concerning Beaty indicates that, although he expressed interest in participating in the Little Joe venture, he was not permitted to do so.

The alleged involvement of these individuals in the smuggling activities from both the 1980s and from 1993 does not defeat Ratcliff's statute of limitations argument. There was some overlap of participants between the conspiracies charged in the initial and superseding indictments, but that does not mean that the conspiracy counts were not materially broadened or substantially amended by the superseding indictment, which is the dispositive issue. Even going beyond the evidence and assuming that all of those individuals were intimately involved in smuggling drugs with Ratcliff from 1980 through 1993, that does not change the fact that the conspiracies for which Ratcliff was convicted had a much broader scope than did the charges in the initial indictment.

Next, the government argues that the notice concern underlying the statute of limitations was satisfied by the pre-trial discovery that took place in this case. Pre-trial discovery conducted after the limitations period has run does not affect the statute of limitation analysis.

Finally, the government argues that Ratcliff was not prejudiced by the superseding indictment because the evidence of his smuggling activities from the 1980s would have been admissible, pursuant to Rule 404(b) of the Federal Rules of Evidence, even if the charges had been limited to the Little Joe venture charged in the initial indictment. Here again, the government's argument improperly discounts the policies underlying statutes of limitations. Statutes of limitations are not rules of evidence. Instead, they exist in order "to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions," and "to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time." Toussie v. United States, 397 U.S. 112, 114-15, 90 S. Ct. 858, 860 (1970). It is one thing to be faced with evidence of criminal activity for which one cannot be convicted, and quite another to face conviction and punishment for that activity. But for the superseding indictment, Ratcliff could not have been convicted of a crime involving his drug-smuggling activities in the 1980s. Because of the superseding indictment, he was convicted and sentenced to over seventeen years in prison based in large part on

those activities. That result was not permissible in light of the statute of limitations, 18 U.S.C. § 3282.[3]

### III. CONCLUSION

This is one of those frustrating cases in which an indictment charged a defendant with serious crimes which, for the most part, he admits having committed, but for which he cannot be punished in light of our holding. "If the guilty go free, that is regrettable." United States v. Chica, 14 F.3d 1527, 1533 (11th Cir. 1994). But it would be more regrettable if we failed to follow the law and permitted Ratcliff to be punished for conspiracies charged against him in an indictment returned outside of the statute of limitations period. See Allen v. Thomas, 161 F.3d 667, 673 (11th Cir. 1998) ("Under our system of justice, however, even those who have committed horrible crimes are entitled to the benefit of the law. The defining characteristic of our rule of law is that it applies to those who are evil as well as those who are saintly, to criminals as well as the law-abiding, to murderers, kidnappers, and robbers, as well as the rest of us.").

Because we find that the superseding indictment against Ratcliff was returned outside of the limitations period and because we conclude that it

---

[3]Ratcliff also argues on appeal that the his sentence violated Apprendi v. New Jersey, ___ U.S. ____, 120 S. Ct. 2348 (2000), and that the district court improperly instructed the jury to return a partial verdict and to continue deliberating on the remaining count. Because we reverse on the basis of the statute of limitations, we do not reach these issues.

22

materially broadened and substantially amended Counts I and II of the initial indictment, we VACATE the judgment against Ratcliff, REVERSE the district court's denial of Ratcliff's motion to dismiss, and REMAND with instructions for the district court to dismiss Counts I and II of the superseding indictment.[4]

---

[4]Because Ratcliff was acquitted on Count III of the superseding indictment, and because that count is identical to the same count of the initial indictment, he may not be tried on Count III of the initial indictment. As to whether Ratcliff may now be tried on Counts I and II of the initial indictment, neither side has briefed that issue. Accordingly, we leave that issue to the district court in the first instance on remand and imply no view concerning it.