# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

EFRAIN RIVERA-RAMOS,
*Defendant-Appellant.*

No. 08-10174

D.C. No.
4:07-cr-00307-RCC-
HCE-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted
April 14, 2009—San Francisco, California

Filed August 21, 2009

Before: Stephen Reinhardt, Eugene E. Siler, Jr.,* and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Reinhardt

---

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

## COUNSEL

Roger H. Sigal, Tucson, Arizona, for the defendant-appellant.

Diane J. Humetewa, United States Attorney, and Angela W. Woodridge, Assistant United States Attorney, Tucson, Arizona, for the plaintiff-appellee.

## OPINION

REINHARDT, Circuit Judge:

We must decide whether New York's definition of "attempt" is categorically broader than the common law definition, so that an attempted robbery conviction in the state of New York is not a "crime of violence" for purposes of the Sentencing Guidelines. Following the Second Circuit, we hold that New York's definition, which requires conduct that comes within a "*dangerous proximity* to the criminal end to be attained," *People v. Warren*, 66 N.Y.2d 831, 832-33 (1985) (emphasis added), is no broader than the definition at common law, which requires a "*substantial step* towards committing the crime," *United States v. Sarbia*, 367 F.3d 1079,

1085-86 (9th Cir. 2004) (emphasis added). Accordingly, the district court correctly determined that Efrain Rivera-Ramos's prior attempted robbery conviction was a "crime of violence," and we affirm his sentence.

## I.

Rivera-Ramos, a native and citizen of Mexico, first entered the United States illegally in 1994. In 2002, he was convicted of attempted robbery in the state of New York and received a three-and-a-half year sentence. He was deported in 2004, but returned to the United States two-and-a-half years later in order to try to earn money to obtain medical care for his father, "who had recently had one of his legs amputated and who had severe diabetes," and to support his nine siblings, his son, and his common law wife, who was pregnant with his second child. Rivera-Ramos was indicted by a Grand Jury for illegal reentry after deportation in violation of 8 U.S.C. § 1326. He was also charged with a sentence enhancement, pursuant to 8 U.S.C. § 1326(b)(2), on account of his prior attempted robbery conviction, which was, according to the Government, a "crime of violence." He pled guilty to the illegal reentry charge. At sentencing, he argued that his attempted robbery conviction was not a crime of violence and that a 16-level upward adjustment should not be applied. The district judge disagreed, but gave Rivera-Ramos the opportunity — which he took — to withdraw his plea agreement and preserve his right to appeal. Taking into account the compelling reasons for Rivera-Ramos's return to the United States, the fact that he did not have multiple reentries after his initial deportation, and his limited criminal record, which consisted solely of the attempted robbery conviction, the district court imposed a 30-month sentence and 36 months of supervised release. The advisory Sentencing Guidelines range was 41-51 months.[1]

---

[1]Although the Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220, 245 (2005), the sentencing court's first obligation

Rivera-Ramos, on appeal, challenges only the district court's determination that an attempted robbery conviction under New York state law is categorically a "crime of violence" for the purposes of the Sentencing Guidelines. We have jurisdiction pursuant to 28 U.S.C. § 1291 (granting jurisdiction over "appeals from all final decisions of the district courts of the United States") and 18 U.S.C. § 3742 (granting jurisdiction to review a sentence "imposed as a result of an incorrect application of the sentencing guidelines"). We review the "district court's determination that a prior conviction qualifies as a 'crime of violence' under the Guidelines . . . *de novo*." *United States v. Rodriguez-Guzman*, 506 F.3d 738, 740-41 (9th Cir. 2007) (citing *United States v. Rivera-Sanchez*, 247 F.3d 905, 907 (9th Cir. 2001) (en banc)).

## II.

U.S.S.G. § 2L1.2(b)(1)(A)(ii) provides for an upward adjustment of 16 levels "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." Robbery is enumerated as a "crime of violence." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). "[A]iding and abetting, conspiring, and *attempting*, to commit" an offense that would be a "crime of violence" if completed qualifies as such, as well. U.S.S.G. § 2L1.2 cmt. n.5 (emphasis added).

Rivera-Ramos concedes that a *completed* first-degree robbery conviction in New York is a "crime of violence." *See* N.Y. Penal Law § 160.15(3) ("A person is guilty of robbery in the first degree when he forcibly steals property and when,

---

is to make the Guidelines calculation. *Gall v. United States*, 128 S. Ct. 586, 596 (2007). A failure to do so correctly is reversible error. *United States v. Gomez-Leon*, 545 F.3d 777, 782 (9th Cir. 2008) (citing *Gall*, 128 S. Ct. at 597; *United States v. Carty*, 520 F.3d 984, 991-93 (9th Cir. 2008) (en banc), *cert. denied sub nom. Zavala v. United States*, 128 S. Ct. 2491 (2008)).

in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [u]ses or threatens the immediate use of a dangerous instrument"). He argues, however, that New York's definition of "attempt" is broader than the common law definition, and that, under the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990), an *attempted* robbery in New York is not, therefore, a crime of violence.[2] The Government disagrees, as do we.

**[1]** Although we are not bound by it, we find dispositive the Second Circuit's analysis of the precise question before us. In the absence of compelling reasons, we would not create a circuit split with the circuit that encompasses New York regarding the meaning of New York law. The Second Circuit has concluded that New York's definition of attempt is coextensive with the common law definition:

> [t]he New York courts . . . make clear that a defendant must perform conduct quite severe in order to be convicted of the crime of attempt. The difference between the federal law's requirement of a "substantial step" and the New York law's requirement of "dangerous proximity" is . . . "more semantic than real." We thus conclude that the district court did not err in concluding that Fernandez-Antonia's conviction of attempted robbery in the third degree consti-

---

[2]In *Rebilas v. Mukasey*, we explained:

> To hold that Rebilas's conviction was categorically a conviction for attempted sexual abuse of a minor . . . , we would have to hold not only that Arizona's definition of public sexual indecency to a minor . . . was categorically sexual abuse of a minor, but also that Arizona's definition of attempt . . . was a categorical match with the federal definition of attempt. This would require a second *Taylor* analysis, comparing the elements of attempt under Arizona law and the elements of attempt under [federal law].

527 F.3d 783, 787 (9th Cir. 2008).

tuted an "aggravated felony" under U.S. Sentencing Guidelines § 2L1.2(b)(1)(A).

*United States v. Fernandez-Antonia*, 278 F.3d 150, 162-63 (2d Cir. 2002).

**[2]** Rivera-Ramos has provided us with no reason to reject the Second Circuit's conclusion. It is true that, were we limited in our analysis to a facial comparison of the New York and common law definitions of "attempt," we would find Rivera-Ramos's position persuasive. In New York, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which *tends to effect* the commission of such crime." N.Y. Penal Law § 110.00 (emphasis added). By contrast, "[a]t common law an 'attempt[ ]' was defined as 'the specific intent to engage in criminal conduct and . . . an overt act which is a *substantial step* towards committing the crime.' " *United States v. Sarbia*, 367 F.3d 1079, 1085-86 (9th Cir. 2004) (citations and quotation marks omitted) (emphasis added). Similarly, pursuant to the Model Penal Code,

> [a] person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he . . . . purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a *substantial step* in a course of conduct planned to culminate in his commission of the crime.

§ 5.01(1)(c) (emphasis added). In interpreting the federal definition of attempt we have required an act of "*such substantiality* that, unless frustrated, the crime would have occurred." *United States v. Harper*, 33 F.3d 1143, 1147 (9th Cir. 1994) (emphasis added); *United States v. Buffington*, 815 F.2d 1292, 1303 (9th Cir. 1987) (emphasis added).

As Rivera-Ramos rightly points out, the plain language of the New York definition appears to encompass more conduct than the common law definition, since it provides no qualifier demarcating how substantial the requisite conduct must be. Any act, great or small, substantial or insubstantial, that incrementally *tends to effect* the commission of the crime would seem to fit within the definition.

The plain language is the beginning of our inquiry, however, not the end. Under the categorical approach, we must also compare the "operational meaning" of the two definitions. *See Sarbia*, 367 F.3d at 1086. Here, as in *United States v. Taylor*, which construed Arizona's attempt statute, "[t]he wording of the [state] statute deviates from and is broader than the federal definition; therefore, we must look to [state] caselaw to determine if [the state statute] is applied in a manner that is contrary to the federal or common-law definition of attempt." 529 F.3d 1232, 1238 (9th Cir. 2008).

In practice, New York applies a significantly more stringent test for attempt than is readily apparent from the language of N.Y. Penal Law § 110.00. In 1927, the New York Court of Appeals recognized that "[t]he word '*tending*' is very indefinite. . . . 'Tending' means to exert activity in a particular direction. Any act in preparation to commit a crime may be said to have a tendency towards its accomplishment." *People v. Rizzo*, 246 N.Y. 334, 336-37 (1927). To make the statute "practical" the court then narrowed its expansive terms and required that an attempt bear a tighter link to the ultimate commission of the crime than the statute's language provided.

> The law must be practical, and, therefore, considers those acts only as tending to the commission of the crime which are *so near to its accomplishment that in all reasonable probability the crime itself would have been committed but for timely interference*.

*Id.* at 337 (emphasis added).

**[3]** Since 1927, the Court of Appeals has expanded upon this definition, finding sufficient evidence of an attempt only where there is both "proof of intent to commit a specific crime" and "a showing that defendant committed an act or acts that carried the project forward within *dangerous proximity* to the criminal end to be attained." *People v. Warren*, 66 N.Y.2d 831, 832-33 (1985) (emphasis added) (holding that there was no attempt where "several contingencies stood between the agreement . . . and the contemplated purchase" of cocaine). In so holding, the court in *Warren* refused to "adopt the definition of attempt contained in the Model Penal Code . . . and applied by the Federal courts," and instead preserved the even more stringent *Rizzo* rule. *Id*. Eight years later, in *People v. Acosta*, the Court of Appeals reaffirmed that, "[w]hile the statutory formulation of attempt would seem to cover a broad range of conduct—anything 'tend[ing] to effect' a crime—case law requires a closer nexus between defendant's acts and the completed crime." 80 N.Y.2d 665, 670 (1993). *Acosta* went on to explicitly disavow the Model Penal Code's test as too broad in comparison to the New York test: "Though apparently *more stringent than the Model Penal Code 'substantial step' test* . . . in this State we have adhered to *Rizzo*'s 'very near' or 'dangerously near' requirement . . . ." *Id.* (citations omitted) (emphasis added).

**[4]** Although the "dangerous proximity" test thus appears to be quite stringent, Rivera-Ramos argues that at least two cases decided by the New York Court of Appeals have suggested a less demanding standard. In *People v. Mahboubian*, the court upheld a conviction for attempted grand larceny where the defendants had hired thieves who broke into and tried to steal the property at issue from a warehouse, but where the defendants had taken no steps to file the subsequent fraudulent insurance claim that would have been necessary to complete the offense. 74 N.Y.2d 174, 192 (1989). In *People v. Naradzay*, the court upheld a conviction for attempted murder and attempted burglary where the defendant had not yet entered the property of his intended victim, and where his

shotgun was lying on a snowbank five to ten feet away from where he stood when arrested. 11 N.Y.3d 460 (2008). Whether these cases — which, we note, cite approvingly to *Rizzo* or its progeny — mark a relaxation of the "dangerous proximity" text is a close and fact-intensive question. Even if they do, however, we cannot say that New York's definition does not remain, at a minimum, coextensive with the common law definition, which requires a "substantial step." *Mahbou-bian* explicitly declined to "adopt the Model Penal Code's [more expansive] definition of an attempt as a 'substantial step' toward completion of the crime." 74 N.Y.2d at 191. To this day, the definition of "attempt" in New York requires a *stronger* showing.

**[5]** We therefore follow the Second Circuit and hold that *attempted* robbery in New York is a crime of violence under the Sentencing Guidelines.[3]

## III.

**[6]** The operational meaning of "attempt" under New York law is no broader than the common law definition. The district court, therefore, did not err in applying a 16-level upward adjustment to Rivera-Ramos's base offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(A) when calculating his advisory Sentencing Guidelines range. The sentence imposed is, for that reason,

**AFFIRMED.**

---

[3]In so holding, we need not reach the Government's additional contention that an attempted robbery is an offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).