[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12494
Non-Argument Calendar
_____

D.C. Docket No. 0:13-cv-62022-RNS


RALPH JONATHAN ALVARADO VERA,

Plaintiff-Appellant,

versus

CRUISE SHIPS CATERING AND SERVICES INTERNATIONAL, N.V.,
COSTA CROCIERE S.P.A.,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 3, 2014)

Before HULL, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Ralph Alvarado Vera ("Plaintiff") appeals the district court's order compelling him to arbitrate his complaints against his employer, Cruise Ships Catering and Services International, N.V. ("CSCS International"), and the owner of the ship upon which he worked, Costa Crociere S.P.A. (collectively "the Defendants") for Jones Act negligence, unseaworthiness, maintenance and cure, and failure to treat claims. After careful review, we affirm.

## I. Background

Plaintiff, a Peruvian citizen, alleges that, while working as a galley steward aboard the cruise ship *M/V Costa Atlantica*, he was injured by repeatedly lifting heavy items, and then having to twist while holding these heavy items, in order to accomplish the work tasks assigned to him. He filed suit in a Florida state court, asserting claims under United States statutory and general maritime law. The Defendants removed the case to federal court and filed a motion to compel arbitration based on the collective bargaining agreement between CSCS International and Plaintiff's trade union.

In so moving, the Defendants relied on the provisions of the collective bargaining agreement requiring that:

> Any questions that may arise concerning the application of laws, or of the terms and conditions of this Agreement or of the [seafarer's employment agreement], shall be subject to the arbitrate [*sic*] of a Board of Arbitration in accordance to Italian law.

2

The district court granted the motion, dismissed Plaintiff's complaint, and ordered the parties to proceed to arbitration.  This appeal followed.

## II. Discussion

Plaintiff challenges the district court's order compelling arbitration on two grounds.  First, Plaintiff argues that the Defendants have failed to meet one of the jurisdictional prerequisites for arbitration.  Specifically, Plaintiff contends that the Defendants failed to present copies of a written arbitration agreement signed by Plaintiff.  Second, Plaintiff argues that the arbitration agreement at issue should be declared void as being against public policy in that it prospectively waives his right to pursue United States statutory remedies.

We review *de novo* a district court's order to compel arbitration.  *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005).

A.    The Jurisdictional Prerequisites for Arbitration Were Present.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") requires courts of signatory nations to give effect to private arbitration agreements and to enforce arbitral awards made in other signatory nations.  United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. I(1), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3.  The United States is a signatory to the Convention, and it enforces

3

its agreement to the terms of the Convention through Chapter 2 of the Federal Arbitration Act.  *See* 9 U.S.C. §§ 201-208.  Italy is likewise a signatory to the Convention.

In determining a motion to enforce an arbitration agreement under the Convention, a district court conducts a "very limited inquiry."  *Bautista*, 396 F.3d at 1294.  An agreement to arbitrate is governed by the Convention if the four jurisdictional prerequisites are present.  *Id.*  Those prerequisites are that: (1) the agreement is "in writing within the meaning of the Convention"; (2) "the agreement provides for arbitration in the territory of a signatory of the Convention"; (3) "the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial"; and (4) one of the parties to the agreement is not an American citizen.  *Id.* at 1294 n.7.  If the agreement satisfies those four jurisdictional prerequisites, the district court must order arbitration unless any of the Convention's affirmative defenses apply.  *Id.* at 1294-95.  Further, the Convention Act "generally establishes a strong presumption in favor of arbitration of international commercial disputes."  *Id.* at 1295.

Here, Plaintiff does not dispute that the second through fourth jurisdictional prerequisites are satisfied.  Instead, he challenges only the first prerequisite, which requires an agreement in writing.  Specifically, Plaintiff argues that there was no

4

such written agreement because the only document he signed was his employment contract, which did not include an arbitration agreement. He further contends that the collective bargaining agreement could not serve as such a written agreement because it was not signed by him and the plain language of the former did not encompass his claims against the Defendants.

We disagree. Parties have an "agreement in writing" under the Convention if there is "an arbitral clause in a contract or an arbitration agreement, signed by the parties." Convention, art. II(2). Here, the arbitral clause is found in the collective bargaining agreement, which is incorporated by reference into Plaintiff's signed employment contract. The first page of Plaintiff's signed employment contract expressly states that "[t]his sailor's labor contract is subject to the conditions set forth in the collective bargaining agreement." Because of this incorporation by reference, Plaintiff, as an individual, and the Defendants have an agreement in writing as defined by the Convention. *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214-15 (11th Cir. 2011) (concluding that parties had an arbitration agreement when document containing such an agreement was incorporated by reference into the employment agreement); *Brisentine v. Stone & Webster Eng'g Corp.,* 117 F.3d 519, 526-27 (11th Cir. 1997) (requiring parties to have agreed individually to a contract containing an arbitration clause).

5

Moreover, the language of the collective bargaining agreement's arbitral clause does encompass Plaintiff's claims. The collective bargaining agreement provides that "any questions" concerning "the terms and conditions of this Agreement" are subject to arbitration. While Plaintiff is bringing Jones Act negligence, unseaworthiness, maintenance and cure, and failure to treat claims, the underlying basis for each of these claims relate to the terms and conditions of the collective bargaining agreement. Plaintiff's complaint reflects that his claims are based on the Defendants' alleged failure to provide a reasonably safe place to work; adequate equipment, such as a lifting belt, manpower, or mechanical lifting device; prompt, proper, and adequate medical care; adequate work hours and rest periods; adequate instruction and supervision; and the failure to promulgate reasonable rules to ensure health and safety. The collective bargaining agreement specifically includes terms and conditions relating to hours of duty, overtime, rest periods, leave, medical attention, and personal protective equipment. Accordingly, we conclude that the jurisdictional prerequisites have been met.

B.    Plaintiff's Claimed Public Policy Affirmative Defense Does Not Invalidate the Arbitration Agreement.

Once the four jurisdictional prerequisites are met, a court must enforce an arbitration agreement unless one of the Convention's affirmative defenses applies. *See Bautista*, 396 F.3d at 1294-95. Plaintiff cites, as his affirmative defense, an

6

argument that the arbitration agreement violates public policy because it potentially deprives Plaintiff of a statutory claim under the Jones Act that he would have had under American law.  Unfortunately for Plaintiff, a challenge based on public policy cannot be made at the stage of proceedings in which a court is considering whether to compel the parties to arbitrate, which is the stage at which this case finds itself.  At this present arbitration-enforcement stage, the only affirmative defense that a reviewing court can accept is a defense that demonstrates the arbitration agreement to be null and void, inoperative, or incapable of performance, under Article II of the Convention.  *See Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1276 (11th Cir. 2011) (citing *Bautista*, 396 F.3d at 1301-02). And, as to a "null and void" challenge, which is essentially what a public policy argument is, such a challenge must be grounded in standard breach-of-contract-type defenses, such as fraud, mistake, duress, and waiver, which defenses can be applied neutrally before international tribunals.  *Id.* at 1276-77.  A public policy defense is not that type of defense.

Instead, if Plaintiff wishes to pursue a public policy defense, he can do so only at a proceeding to enforce the arbitration award (otherwise known as the "award-enforcement" stage), and an award-enforcement proceeding necessarily occurs after the arbitration proceeding has concluded.  *Id.* at 1276-77, 1280-82,

1284-85.  Indeed, as *Lindo* noted, Article V, which applies to the award-enforcement stage, is the article of the Convention dealing with the way in which public policy defenses should be treated.[1]  *Id.* at 1280.

Plaintiff recognizes that *Lindo* dooms his present challenge to the Defendants' motion to compel arbitration.  His response is that we should not follow *Lindo* because it is not good law.  To support that contention, he argues that *Lindo* overlooked an earlier Eleventh Circuit decision, *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009), thereby running afoul of this Court's prior-panel precedent rule.  That rule holds that when a later panel decision contradicts an earlier one, the earlier panel decision controls.  *See Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006) ("[W]hen a later panel decision contradicts an earlier one, the earlier panel decision controls.")

Yet as *Lindo* explained, *Thomas*, itself, did not follow a prior circuit precedent:  *Bautista*.  *Bautista,* which interpreted the types of defenses available to counter a motion to compel arbitration, had held that Article II's "null and void" clause applied only to traditional breach-of-contract defenses, such as fraud or mistake.  *Lindo*, 852 F.3d at 1278.  *Thomas*, which neither cited nor acknowledged

---

[1]  "Article V expressly provides, '*Recognition and enforcement of an arbitral award* may also be refused if the competent authority in the country where recognition and enforcement is sought finds that . . . [t]he recognition or enforcement of the award would be *contrary to the public policy of that country*.'"  *Lindo*, 652 F.3d at 1280.

*Bautista's* governing principles, therefore imported an Article V defense into Article II, in contravention of prior Eleventh Circuit precedent. *Id.* Accordingly, as it was required to do under the prior-panel precedent rule, *Lindo* correctly followed the earlier controlling decision: *Bautista.* [2]

Plaintiff also contends that *Lindo* was inconsistent with Supreme Court precedent: both before and after *Lindo's* issuance. As to the earlier Supreme Court case relied on by Plaintiff, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S. Ct. 3346 (1985), *Lindo* explained in some detail why *Mitsubishi's* dicta, that is found in a footnote and that is now relied on by Plaintiff, was not inconsistent with its holding. *Lindo*, 652 F.3d at 1265-68, 1281-82.

As to the Supreme Court case subsequently issued after *Lindo*, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. ___, 133 S. Ct. 2304 (2013), we likewise conclude that *Lindo* did not conflict with it. In *Italian Colors*, the Supreme Court

---

[2] Plaintiff also argues that *Lindo* disregarded another earlier Circuit precedent, *Paladino v. Avnet Computer Tech., Inc.*, 134 F.3d 1054 (11th Cir. 1998), which held that an arbitration clause was unenforceable under the Federal Arbitration Act because it did not permit relief equivalent to the federal statutory remedies sought by the plaintiff. But Plaintiff ignores the fact that *Paladino* interpreted the Federal Arbitration Act, not the Convention, unlike *Lindo*, which interpreted the same law that Plaintiff concedes must govern this case. Accordingly, *Paladino* does not constitute a prior precedent that is contradictory to *Lindo*.

9

acknowledged the "effective vindication" doctrine,[3] which it noted had originated as dictum in *Mitsubishi Motors* (where it had <u>not</u> been applied to invalidate the arbitration agreement at issue there) and had been discussed in two other Supreme Court cases, (but again <u>not</u> applied to invalidate the arbitration agreements there). *See Italian Colors*, 570 U.S. at ___, 133 S. Ct. at 2310.  Likewise, notwithstanding its mention of this doctrine on which Plaintiff seeks to rely, the Supreme Court in *Italian Colors* gave no further guidance on the doctrine's application that would alter our previous understanding of it.  The opinion in *Italian Colors* likewise declined to apply that doctrine, or any other rationale, to invalidate the arbitration agreement at issue.  *Id.* at ___, 133 S. Ct. at 2310-11.  Because *Italian Colors* does not conflict with our decision in *Lindo*, and because we determined in *Lindo* that the decision announced there was consistent *with Mitsubishi Motors*, we likewise conclude that *Lindo* remains good law.

### III. Conclusion

Properly relying on binding precedent, the district court correctly granted the Defendants' motion to compel arbitration.

---

[3] "The 'effective vindication' exception . . . originated as dictum in *Mitsubishi Motors*, where we expressed a willingness to invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's *right to pursue* statutory remedies.' . . . Subsequent cases have similarly asserted the existence of an 'effective vindication' exception . . . but have similarly declined to apply it to invalidate the arbitration agreement at issue." *Italian Colors*, 570 U.S. at ___, 133 S. Ct. at 2310 (internal citations omitted).

**AFFIRMED.**